SARAH L. TINGUE, Respondent, *v.* THE VILLAGE OF ，PORT CHESTER et al., Appellants.

In an action to restrain the sale of land for non-payment of an assessment for a local improvement and to set aside the assessment because of alleged invalidity in the proceedings, the burden is upon plaintiff to establish the invalidity complained of. There is no presumption in such an action that municipal authorities have acted illegally or that conditions precedent have not been performed.

Where, therefore, in an action to restrain the sale of plaintiff's lot in the village of Port Chester, and to set aside an assessment thereon for grading a street, it appeared that the charter of the village (§ 4, tit. 5, chap. 818, Laws of 1868) requires the petition for laying out a street to be signed by persons owning land on the line thereof, but does not require the fact of such ownership to be stated in the petition. *Held,* the fact that the petition for opening the street in question did not show on its face that the persons signing it were such owners did not tend to negative their ownership; and, in the absence of other proof, that the invalidity of the proceedings in this respect was not established.

The distinction between such a case and one where the owner of a tax title seeks to enforce it by action pointed out.

Also *held,* that as to other objections which related to matters which might have been corrected on appeal from the report of commissioners, plaintiff was foreclosed by the order of confirmation.

Also *held,* as it appeared that the parties interested in the lands taken for the street, and among them plaintiff's grantor, who then owned the lot, accepted the awards made to them, and acquiesced in the proceeding, he was concluded from alleging irregularities therein.

Also *held,* the fact that the specifications upon which the bids for grading were based embraced another street as well as the one in question was immaterial, it appearing that profile maps showing the amount and kind of excavation and filling required on each street were separately made and filed with the specifications.

Also *held,* that the charter (§ 23, tit. 5) did not require the trustees of the village to pass upon the bids at the time of opening them; that time for comparison of the bids and calculation to determine which was most preferable was essential and might be taken.

It was objected that the notice of the meeting of the trustees to act in respect to the grading did not describe the district of assessment with sufficient accuracy. The street had then been laid out and the map and report of the commissioners filed. The notice referred to the street by its name and described the assessment district as including "all the lands on both sides of said street to a depth not exceeding one hundred feet. *Held,* that this was a substantial compliance with the charter (§ 23, tit. 5).

This was a reassessment; the original assessment made in March, 1874, having been declared invalid and set aside (71 N. Y. 309). *Held,* that there was no legal or valid authority to make a reassessment; that no such authority was conferred by the original charter; that the provision in the act of 1877, amending the charter (Chap. 227, Laws of 1877), which authorized reassessments in certain cases where prior assessments had been set aside or held invalid, only applied to assessments so set aside or held illegal after the passage of the act, and that the act of 1878 (Chap. 277, Laws of 1878), which attempted to authorize reassessments in cases of assessments set aside or vacated, before as well as after the passage of the act, was void as in contravention of the provision of the State Constitution (Art. 3, § 16), directing that a local or private bill shall embrace but one subject, and that shall be expressed in the title.

(Argued December 21, 1885 ; decided January 19, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made May 15, 1883, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are set forth in the opinion.

*Edward Wells* for appellants. Neither the charter of the village nor the law of highways requires the line or route of the road to be particularly defined by course and distance in the application. (*Hallock* v. *Woolsey,* 23 Wend. 328.) Whether the petitioners were owners cannot be inquired into collaterally. ( *Van Steenburgh* v. *Bigelow,* 3 Wend. 42, 46.) Where the meaning is plain in a contract or law, and the sense requires it, the court will substitute one word or number for another, or even transpose or rearrange sentences. (2 Pars. Con. [4th ed.] 15.) The one only object of the act of 1878 was to amend the charter of Port Chester, and that is expressed in the title. (*Greaton* v. *Griffin,* 4 Abb. Pr. 310 ; *Woodson* v. *Murdock,* 22 Wall. [U. S.] 351, 373 ; *Brewster* v. *Syracuse,* 19 N. Y. 116 ; *People* v. *City of Rochester,* 50 id. 525.) It is the duty of the courts so to construe as to meet the mischief and advance the remedy, and not to violate fundamental principles. (*Hart*

Statement of case.

v. *Cleiss*, 8 Johns. 41 ; *Walker* v. *Harris*, 20 Wend. 555–562 ; *Watervliet T. Co.* v. *McKean*, 6 Hill, 616.) Plaintiff is estopped from denying the avenue to be a highway, by standing by and seeing expenses and cost of grading incurred without making any objection, while the grading was in progress. (*McGowan's Case*, 8 Weekly Dig. 461.)

*Calvin Frost* and *Ralph E. Prime* for respondent. Proceedings to lay out a street and those for the grading of a street are statutory proceedings, each attacking the property rights of the citizen, and each must be strictly pursued, and the record must show the statutory requirements complied with, the jurisdiction obtained and kept step by step, and the record cannot be helped by intendment or by any presumptions. (*Sharp* v. *Johnson*, 4 Hill, 98 ; *Miller* v. *Brown*, 56 N. Y. 383 ; *Matter of Second Ave. M. E. Church*, 66 id. 395 ; *Hopkins* v. *Mason*, 42 How. 115 ; *Merritt* v. *Port Chester*, 71 N. Y. 309 ; *Adriance* v. *McCafferty*, 2 Rob. 153 ; *Matter of N. Y. & B. R. R.*, 62 Barb. 85 ; *Walkill V. R. R.* v. *Norton*, 12 Abb. [N. S.] 317.) Presumption does not supply the lack of proof. (*Miller* v. *Brown*, 56 N. Y. 383, 386 ; *Commissioners of Cohoes* v. *Lansing*, 45 id. 19 ; *People* v. *Commissioners of Hempstead*, 7 Hun, 17 ; *Matter of Buffalo*, 78 N.Y. 362, 366.) The burden is upon defendants to show that the petition was signed by the required number of qualified persons. (*Sharp* v. *Johnson*, 4 Hill, 98.) The owners were entitled to be heard by the court on the appointment of commissioners. (Chap. 818, tit. 5, p. 4 ; *Matter of Mayor, etc., and Manhattan Co.*, 1 Caines, 507 ; *In re Cambria Street*, 75 Penn. St. 357.) The whole proceeding is illegal because of the bad oath. (*Merritt* v. *Port Chester*, 71 N. Y. 309 ; *People* v. *Connor*, 46 Barb. 333; *State* v. *Jersey City*, 38 N. J. L. 85 ; *State* v. *Perth Amboy*, 2 id. 425 ; *Radcliff* v. *Brooklyn*, 4 N.Y. 195 ; *Matter of Mayor and Manhattan Company*, 1 Caines, 507.) The right of entry to grade the street or to do any thing, was not obtained until the end of a chain of acts, all to be performed according to the order, manner and form of the statute ; until then every entry

was a trespass. (*Matter of Rhinelander*, 68 N. Y. 105, 108; *Matter of Cheeseboro*, 78 id. 232, 238; *Boyle* v. *Brooklyn*, 71 id. 1; *People* v. *Haines*, 49 id. 587.) Nor could the legislature, after the constitutional amendment of 1875, lay out a street, or provide for laying out a street, or delegate the power to create a debt or charge which did not in law exist, and it was powerless to charge this illegal debt on the land-owners, by the way of a reassessment without their consent. (*Horton* v. *Thompson*, 71 N. Y. 513; Const., art. 3, pp. 18, 20.) The act of 1878 (Chap. 277), so far as it was thereby attempted to change the act of 1877, is unconstitutional and void. It was a local act. (*People* v. *Hill*, 35 N. Y. 449; *People* v. *Allen*, 42 id. 404; *People* v. *Briggs*, 50 id. 553; *Fishkill* v. *R. R. Co.*, 22 Barb. 634; *Smith* v. *Mayor, etc.*, 34 How. 508; *People* v. *Brinkerhoff*, 68 N. Y. 265; *Mayor, etc.*, v. *Colgate*, 12 id. 146; *Sun Co.* v. *Mayor, etc.*, 8 id. 253.) Conditions precedent in proceedings of this kind must be literally followed. (*Adriance* v. *McCafferty*, 2 Rob. 153.) The particular lot and the situation of each parcel and its peculiar circumstances were to be considered. (*Matter of Degraw St.*, 18 Wend. 568; *Watkins* v. *Zwictusch*, 47 Wis. 573.) The assessment being paid, it cannot be set aside. It is extinguished, and naught left to be set aside. (*In re Lima*, 77 N. Y. 170.)

ANDREWS, J. This is an equitable action, brought to restrain a sale of plaintiff's lot in the village of Port Chester, for the non-payment of an assessment laid for grading a street in the village, called Irving avenue, and to vacate the assessment. Irving avenue was laid out and declared a public street by resolution of the trustees of the village, passed June 2, 1873, under proceedings initiated November 11, 1872, upon the petition of eight persons, recited in the petition to be residents and tax payers of the village. The charter of Port Chester (Laws of 1868, chap. 818, tit. 5) authorizes the trustees of the village, under the restrictions and limitations therein prescribed, to cause streets and avenues within the village to be laid out, opened and graded, and to assess the expense thereof upon the

property benefited. The proceedings for grading Irving avenue, were commenced June 2, 1873, the same day on which it was declared by the resolution of the trustees to be a public street. Commisssioners were appointed to assess the expense of the grading, bids were received for the work, and contracts therefor were let, and the report of the commissioners was made March 7, 1874, and confirmed March 9, 1874. The original assessment was subsequently set aside and held to be invalid for reasons stated in the opinion in *Merritt* v. *Village of Port Chester* (71 N. Y. 309). Afterward the legislature passed two acts amending the charter of the village, being chapter 227 of the Laws of 1877, and chapter 277 of the Laws of 1878. The trustees after the passage of these acts, took proceedings for a reassessment, and the report of the commissioners appointed to make the reassessment was confirmed September 8, 1879. This second assessment is the one assailed and sought to be set aside in this action.

The complaint challenges the validity of nearly every step taken in the proceedings in respect to Irving avenue, from their inception. It alleges that the avenue was never legally laid out, that the proceedings for grading were not in conformity to the charter and were void, and that if the street was legally laid out and graded, the reassessment of the expense of grading was unauthorized. The laying out proceedings are questioned upon various grounds, some jurisdictional, and others relating to the regularity of the procedure. It is claimed among other things that it does not affirmatively appear that the persons who signed the petition for laying out the street, were owners of lands situated thereon. The charter (Title 5, § 4) requires, as the initial proceeding in the laying out of a street, that a petition therefor shall be presented to trustees of the village, signed by one-third of the persons owning land on the line thereof. The petition for laying out Irving avenue did not show on its face that the persons who signed it were such owners. The plaintiff in support of this and other objections to the proceedings, invokes the well-settled doctrine, declared in numerous cases that where lands are

taken under statute authority, or an assessment is imposed thereon in derogation of the common law, no intendment is indulged in favor of the regularity of the proceedings, but that each step in the process prescribed by the statute must be shown to have been taken by the party asserting any rights thereunder. (*Sharp* v. *Speir*, 4 Hill, 76; *Sharp* v. *Johnson*, id. 92.) In other words the *onus* in such case, of showing the regularity of the proceedings, is upon the party claiming under them. The cases cited were actions of ejectment in which the defendants, admitting the original title of the plaintiff, set up a subsequently acquired tax title, as a defense to the action. The doctrine that the *onus* was upon the party claiming under the tax title, to establish its regularity, was appropriately applied in those cases. But the plaintiff in this case by the character of her action, assumed the burden of establishing the invalidity of the proceeding of the trustees. She comes into court asserting as a ground for equitable relief, that an illegal assessment has been imposed on her land, which, if followed by a sale thereof, and a conveyance as was threatened, will constitute a cloud on her title. The trustees of the village, as we have seen, are authorized to lay out and open streets under certain restrictions and conditions. There is no presumption that in undertaking to execute this authority they have acted illegally, or that conditions precedent have not been performed. The plaintiff, instead of awaiting an attack on her title by one claiming under the assessment, becomes herself the actor, and calls upon the court to interpose and prevent the sale of her property, alleging that the trustees never acquired jurisdiction by a proper petition, and that the proceedings are otherwise defective. She has tendered this issue, and according to the general rule the party holding the affirmative of an issue must prove it, or at least go as far as to make a *prima facie* case, calling upon the other party to answer it. (1 Greenl. Ev., § 74; BROWN, J., *Bouton* v. *City of Brooklyn*, 15 Barb. 375, 395; *In re Ingraham*, 64 N. Y. 310; *Heinemann* v. *Heard*, 62 id. 448.) The fact that the petitioners were not on the face of the petition alleged to be

owners of land on the proposed street, did not tend to negative the fact. The charter does not require that the fact shall be stated in the petition, or provide in what manner it shall be established. The plaintiff did not prove that the signers were not· qualified petitioners, and upon the issue as framed, the burden of establishing it was upon the plaintiff.

The laying out proceedings are also objected to for indefiniteness in the description of the proposed assessment district in the notice given by the trustees of the hearing of the matter of the petition (Charter, tit. 5, § 4), and for various irregularities in the proceedings of the trustees, and of the commissioners of estimate and assessment. These objections, so far as they relate to matters which might have been corrected on appeal from the report of the commissioners, are foreclosed by the final order of confirmation (*Embury* v. *Conner*, 3 N. Y. 511; *Dolan* v. *Mayor, etc.*, 62 id. 472), assuming of course, that the parties interested had legal notice of the proceeding. But we deem it unnecessary to consider the objections in detail, for the reason that upon the facts found it is to be inferred that the parties interested in the lands taken for the street, accepted the awards made by the commissioners and acquiesced in the proceedings. This inference is especially strong in respect to the plaintiff's grantor, who owned the lot now belonging to the plaintiff, until 1877. Upon his request the course of the street over his land was changed from the line originally designated, and he paid an assessment for benefit, imposed by the commissioners, and presumptively was awarded, and received compensation for the land taken. The plaintiff is concluded by the acts of her grantor. The street has been open since 1873, and has been used as a public street since 1875, without objection on the part of the owners of the land taken for the improvement. There should, under these circumstances, be very clear proof, that the rights of the land-owners had neither been extinguished nor waived, and that the street had not, by use or otherwise, become a legal highway, to justify the setting aside of an assessment for its improvement on that ground.

The objections to the grading proceedings relate to alleged omissions by the trustees to pursue the directions of the statute. But we think none of them are well founded. The fact that the specifications upon which the bids were based, applied to work upon both Haseco and Irving avenues, was immaterial. The two improvements were going on at the same time. It appears that profile maps, showing the amount of rock and earth excavation and filling required on each avenue, were separately made and filed with the specifications, and proposals were invited for the work on each. The bids were to do the work by the foot or yard, and the contract for the work on Irving avenue was let to the person whose proposal was deemed by the trustees to be the most favorable. The charter (Tit. 5, § 23) does not require that the work should be let for a gross sum instead of a price based on quantities. The claim that section 23 requires the trustees to pass upon the bids at the time of opening them, proceeds upon a strained construction of the language of the section. The trustees opened the bids on the twenty-second of September, and, after referring them to the road committee, adjourned till the twenty-fourth, on which day the bid of Weir was accepted. It is evident that some time for comparison and calculation was essential to enable the trustees to ascertain which bid was most favorable. The word " then " in the clause " the trustees shall then determine," etc., reasonably construed has the same sense as " thereafter," and does not restrict the trustees to an instant determination. The objection, that the notice of the meeting of the trustees, to act in respect to the grading, did not describe the limit, or district of assessment with sufficient accuracy, is also, we think, unfounded. The street at that time had been laid out. The map and report of the commissioners had been filed and was of record. The street was known as Irving avenue. The notice referred to Irving avenue, and described the assessment district as including " all the lands on both sides of said street, to a depth not exceeding one hundred feet." This was, we think, a substantial compliance with the charter (§ 23). The

claim that the street was graded sixty-six feet wide, instead of sixty feet, the width mentioned in the petition for laying it out, is not well founded in fact. The evidence tends to show that the grading was confined to sixty feet, and that no expense for grading to any greater width, was incurred.

The final class of objections relate to the reassessment in 1879, and we feel constrained to affirm the judgment vacating the assessment, on the ground that there was no legal, valid authority to make a reassessment. The original charter makes no provision for a reassessment for a local improvement, where the first assessment is set aside by the court. The authority of the trustees under the original charter to cause an assessment to be made, was spent on their confirmation of the report of the commissioners of assessment, March 7, 1874. It is not claimed by the learned counsel for the corporation that the trustees could direct a reassessment in the absence of statutory authority. But he claims that such authority was given by section 2, chapter 277, of the Laws of 1878. If that was a valid enactment, the claim is well founded. The act is entitled "An act to amend chapter 245, of the Laws of 1875, entitled ' An act to amend chapter 818, of the Laws of 1868, entitled ' An act to incorporate the village of Port Chester, and to amend chapter 227, of the Laws of 1877.'" The act of 1877, referred to in this title, added certain sections to the charter of the village, and among others a section authorizing a reassessment for the expense of street improvements in the village in certain cases where a prior assessment was set aside or held invalid. It was probably intended to authorize a re-assessment of the expense of grading Haseco and Irving avenues, the assessments for which, had, before the passage of the act, been vacated. But if so intended it failed to accomplish the purpose intended. The language of the act in its natural and grammatical construction only authorized reassessments in cases of assessments which should be set aside, or held illegal, after the passage of the act. The act of 1878 undertook to remedy this difficulty, by amending the act of 1877, so as to authorize a reassessment in cases of assessment set aside or vacated *before* or after the passage of the

act.    But it is insisted that the act of 1878, so far as it assumed to amend the act of 1877, is void as in contravention of section 16, article 3, of the Constitution, because the subject is not expressed in the title.    We perceive no answer to this objection.    If the act of 1878 had been entitled simply " An act to amend chapter 227 of the Laws of 1877," there could be no question.    That an act so entitled is void, has been adjudicated by this court.    (*People* v. *Hills,* 35 N.Y. 449 ; *People, ex rel. Rochester,* v. *Briggs,* 50 id. 553.)    Such a title, as was said by CHURCH, Ch. J., in the case last cited, would express no subject, but contain a reference only where the subject might be found.    The first clause in the title of the act of 1878, referring to the act of 1875 and amending it, is sufficiently definite within the authorities.    It shows that the subject of the amended act, and consequently of the amendment, is the charter of Port Chester.    But the second clause of the title is not aided by its annexation to the first clause.    It is found by reference to the act of 1877, that that act also is an amendment to the charter. But this cannot be known by the title of the act of 1878. The latter clause of the title does not refer to the prior clause, and there is nothing to indicate that the subject-matter of the act of 1877, which it amends, is the charter of Port Chester, or that the two acts referred to in the title have any relation to each other.    The title would be as consistent and intelligible if the act of 1877 related to the city of New York, or any other city or village in the State.

This conclusion requires an affirmance of the judgment.

All concur.

Judgment affirmed.