### MILLER v. CITY OF AMSTERDAM.

### SMITH v. SAME.

(Supreme Court, General Term, Third Department. May 8, 1894.)

STREET ASSESSMENT—VALIDITY—PETITION BY PROPERTY OWNERS.

Where a street improvement is made without a petition signed by the owners of a majority of the lineal frontage of the street, as required by Laws 1885, c. 131, § 102, the assessment is void.

Appeal from judgment on report of referee.

Two actions—one by John C. Miller against the city of Amsterdam, and the other by Mary C. Smith against the same defendant—

to remove cloud from title.   There was a judgment in favor of plaintiff in each case, and defendant appeals.   Affirmed.

The opinion of A. D. L. Baker, Referee, is as follows:

The plaintiff brings this action for the purpose of having a cloud removed from the title to certain real estate owned by him in the city of Amsterdam, claiming that the defendant has laid an illegal assessment upon the same. The defendant, a municipal corporation, having assessed the plaintiff's property for a part of the expense incurred in the paving of East Main street, in said city, and being about to collect the same, the plaintiff obtained an injunction in the action, restraining such collection until the further order of the court.   The plaintiff avers in his complaint that the assessment referred to was void, for the reason that the initiatory step necessary to confer jurisdiction to make the improvement was not taken, and, further, that the defendant, in its proceedings in connection therewith, failed to comply with the charter under which it is incorporated, and that, therefore, the assessment levied for such alleged improvement is void and illegal.   The defendant is incorporated under chapter 131 of the Laws of 1885.   Section 95 of this chapter confers upon the common council the power to cause any street in the city to be graded, paved, or repaved, and the section also provides the manner and method by which the expense of the same shall be paid; but in order to fully understand the rights and powers of the common council over the streets in said city, and to determine when they shall be exercised, so far as such powers relate to paving, etc., it is necessary to read section 102 of this chapter, which provides that "no sewer shall be constructed, nor shall any street be paved by the city, unless the owners, owning a majority of the amount of lineal feet fronting on the part of the street proposed to be paved or sewered, petition therefor, and the same shall be ordered by a vote of two-thirds of the common council in office."   From the reading of this section it is apparent that the common council is not permitted to exercise this power until consent has been given, or request made, as pointed out in the section last referred to.   In other words, this power on the part of the common council cannot be legally exercised unless the owners owning a majority in amount of the lineal feet fronting on the street proposed to be paved petition for the same.   It is obvious, therefore, that without such petition the common council cannot act in reference to such improvement, for in this way, only, can it obtain jurisdiction, which, in my opinion, is absolutely necessary in order to render its subsequent act in connection with the improvement valid and binding upon the property owners sought to be charged with the expense thereof. Section 102 serves as a protection to the property owners of the city.   If it were not for its provisions, it might be possible for the common council to act arbitrarily, and thereby impose an unjust tax upon the property owners. It may be that, even after jurisdiction has been obtained in the first instance, a substantial departure from the statute, or a failure to comply with its provisions in any material point, will render the proceedings void.   The courts of our state declare "that, where a city is authorized by statute to assess property for internal improvements, the act must be rigorously pursued, to give validity to a subsequent sale of the property to collect the tax for such improvements."   Meritt v. Village of Port Chester, 71 N. Y. 309; Hopkins v. Mason, 61 Barb. 469.   In proceedings under an act authorizing street improvements, jurisdiction is acquired step by step, and ceases with a failure to comply with any material provision of the act.   Adams v. Railway Co., 10 N. Y. 328.   Where no jurisdiction is obtained in the first instance, or where it is lost owing to a failure to comply with any material provision of the statute, the proceedings are void, and, if void, then a collateral action may be brought to set aside the assessment as a cloud upon the plaintiff's title, but, if it is simply an irregularity, perhaps such an action would not be the proper remedy.

This brings us to the question involved in the case at bar: Was the petition presented to the common council in this case, and upon which it relied and acted, and upon which the assessment sought to be enforced is based, a proper petition,—such a one as is prescribed by section 102?   The street committee to which it was referred say it was.   In its report to the common council on

the 1st of October, 1890, it finds the total feet frontage on East Main street to be 8,200. It then deducts 600 feet for intersecting streets. It also finds that the petition represents 4,055 feet. To this is added 302 feet taken from the water commissioners' books, making in all 4,367 feet, and reported, in effect, that it had more than a majority in amount of lineal feet fronting on the street in favor of the proposed improvement. This report was accepted and acted upon by the common council, the contract for the paving of the street was let, and the street thereafter paved. The evidence in the case is that the total number of feet actually paved was 8,472.5 feet, and that the total number of lineal feet fronting on the street between Bridge street and the end of the street-car tracks,—the two points mentioned in the petition,— was 8,339.5, instead of 8,200, feet, as reported by the street committee. I am unable to see where the street committee obtained the right to deduct the 600 feet for intersecting streets, or to add the 302 feet taken from the books of the water commissioners; but assuming that such right existed (which I do not concede), still no petition as required by section 102 was before it or the common council. From a careful examination of the evidence, I am clearly of the opinion that the petition, or what purported to be the petition, did not contain the signatures of the owners owning the requisite amount of property fronting upon the street sought to be paved. The petition, in order to confer jurisdiction upon the common council or city, should have contained the signatures of the owners owning at least a majority of the 8,384 feet, that being the number of feet paved between Market and Eagle streets. It did not contain such majority. In fact, the evidence seems to be conclusive that the petition did not contain the signatures of the owners exceeding 3,300 feet, which was considerably less than half of the total number of feet frontage as found by the street committee. This being true, it follows that the common council did not have a petition presented to it, such as the statute requires, and its conclusion or determination to the contrary, in my judgment, was of no avail. It could not obtain jurisdiction by simply saying or resolving that it had it. It is true that some of the federal authorities cited by defendant's counsel seem to indicate a different doctrine; but the court of appeals of our state, in repeated cases, has established the doctrine clearly that, if jurisdiction was not in fact conferred,—if the petition was not in compliance with the material provisions of the statute,—any proceedings or action on the part of the common council, based upon such petition, would be void, and a collateral proceeding or action can be brought to set aside the assessment for the reason that the proceeding was illegal from the beginning. Jex v. Mayor, 103 N. Y. 536, 9 N. E. 39.

In this view of the case I do not deem it necessary to pass directly upon the questions raised upon the trial as to whether or not the common council, after accepting the report of the street committee, complied with the statute in the proceedings taken by it. It follows, therefore, if I am right in my views of the case, that the plaintiff should succeed in his action, and should have judgment in his favor, declaring the assessment against his property void.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

Edward P. White, for appellant.
Westbrook & Borst (H. V. Borst, of counsel), for respondents.

PUTNAM, J. I have looked over these cases, and it seems to me that it is unnecessary to write an opinion. The conclusion of the referee that a majority of the taxpayers on the street did not sign the petition seems sustained by the evidence, and, in the absence of the signatures of such majority, the defendant's trustees had no power to act. I do not think that defendant's trustees could obtain jurisdiction by an erroneous finding of a fact necessary to confer jurisdiction. See Jex v. Mayor, 103 N. Y. 536–539, 9 N. E. 39; Cag-

win v. Town of Hancock, 84 N. Y. 532; Lathrop v. City of Buffalo, 3 Abb. Dec. 30; Tingue v. Village of Port Chester, 101 N. Y. 294, 4 N. E. 625.   All concur.