[No. 1871. Decided March 21, 1896.]

THE STATE OF WASHINGTON, *Respondent*, v. J W. HAL-BERT, *Appellant*.

RAPE—AGE OF CONSENT — EVIDENCE — CONVERSATIONS IN ABSENCE OF ACCUSED.

The age of consent in this state, as respects the crime of rape is twelve years, and not sixteen, since the act of 1885-86, p. 84, at-tempting to amend Code 1881, § 812, by substituting the word "six-

teen" for the word "twelve" was void for the reason that its object was not expressed in its title. (HOYT, C. J., and DUNBAR, J., dissent.)

Evidence of conversations had between witnesses in the absence of defendant, are incompetent.

Appeal from Superior Court, Snohomish County.— Hon. JOHN C. DENNEY, Judge. Reversed.

*Coleman & Hart,* for appellant.

*J. W. Heffner,* Prosecuting Attorney, for The State.

The opinion of the court was delivered by

ANDERS, J.—The appellant was tried and convicted upon an information charging that "the said J. W. Halbert, on the 20th day of December A. D., 1894, in said Snohomish county, State of Washington, did unlawfully and feloniously carnally know and abuse one Emma Halbert, then and there being a female child under the age of sixteen (16) years, against the peace and dignity of the State of Washington."

After overruling a motion for a new trial, the trial court sentenced the defendant to imprisonment in the state penitentiary for a period of fifteen years.

The accused is the father of the said Emma Halbert, and it is conceded that the latter, at the time of the alleged offense, was over thirteen years of age. Appellant challenged the sufficiency of the information in the superior court by demurrer, and he here insists that, inasmuch as it is not alleged in the information that carnal knowledge of the prosecutrix was accomplished by force, and against her will, or that the prosecutrix was, at the time stated, under the age of twelve years, no crime was charged against him and his conviction was illegal.

The question thus presented for determination is,

"what is the age of consent under the law of this state?" If it is twelve years, as claimed by appellant, the objection to the information should have been sustained, but if it is sixteen as assumed by the prosecuting attorney and the trial court, the information is sufficient, notwithstanding the further objection that it does not state that appellant was not the husband of the prosecutrix. 2 Bishop, Crim. Proc., § 956.

Sec. 28 of the Penal Code, which is the statute upon which appellant bases his contention, provides that, "If any person ravish and carnally know any female of the age of twelve years or more, by force and against her will, or carnally know and abuse any female child under the age of twelve years, he shall be punished by imprisonment in the penitentiary for life or any term of years." This section was § 812 of the Code of Washington (1881) and was incorporated in the present Penal Code, by the compiler, as a part of the existing criminal law. The compilation of the volume containing it, as well as that containing the general statutes of the state, was authorized by the legislature, and the compiler, who was thereby designated as commissioner, was directed, as soon as possible after the adjournment of the legislature in 1891, and within ninety days, to publish in two royal octavo volumes the general statutes then in force, including the code of 1881, and the general laws passed at said session, and to deliver to the secretary of state one thousand copies of the same printed and bound in the best style of law book publishing. (Laws 1889-90, p. 236). These volumes were prepared and published, at great expense to the state, and were distributed by the secretary of state, by direction of the legislature, to the various justices of the peace, judges of the courts and prosecuting attorneys throughout

the state, for their guidance in the discharge of their respective duties. They were understood, both by the legislature and the commissioner, to contain all the existing laws of the state. The codes therein contained are constantly referred to by the bench and bar as the "Code of Procedure" and "Penal Code" of this state, and are generally recognized and relied upon as being such. For these and other reasons that might be suggested, we may, we think, with the utmost propriety hesitate to pronounce the section above quoted, or any other provision of the Penal Code, invalid, until it is clearly shown that it does not, in fact, express the existing law concerning the subject of which it speaks.

It is claimed, however, on behalf of the respondent, that this § 28, or, which is the same thing, § 812 of the Code of 1881, was amended by the legislature in 1886 (Laws 1885-6, p. 84), by substituting the word "sixteen" for the word "twelve" where the latter appears in said § 812, and that this amendatory act has never been repealed, and, must, therefore, be declared to be the law. On the other hand, appellant insists that this alleged amendatory and repealing act was void because its object was not expressed in the title, as required by the Organic Act of the then territory, and in support of his position cites the cases of *Harland v. Territory,* 3 Wash. T. 131 (13 Pac. 453), and *Rumsey v. Territory,* 3 Wash. T. 332a (21 Pac. 152.) Those cases were, of course, decided prior to the organization of the state, and, according to the doctrine therein announced, the act of 1886, now under consideration, was absolutely void for the reason that it was designated in its title as "An Act to amend § 812 of the Code of Washington Territory," without any other or further expression of its object.

By § 2 of art. 27 of the constitution, it was provided
that all laws then in force in the Territory of Wash-
ington, which were not repugnant to the constitution,
should remain in force until they should expire by
their own limitation, or be repealed by the legislature.
If, therefore, the act in question was not *in force* at
the time of the adoption of the state constitution, it
necessarily follows that it never became the law of this
state, and that the section which it attempted to amend
is still the law. Was it then in force? The highest
judicial tribunal of the territory said it was not, and
for this reason, no doubt, it was omitted from the
compilation of "existing laws;" and, under the cir-
cumstances, we do not think that we ought to over-
rule its decisions.

. But it is suggested on the part of the respondent
that this court, in *Marston v. Humes,* 3 Wash. 267 (28
Pac. 520), established a rule directly contrary to that
announced by the supreme court of the territory, in
the cases above mentioned. In that case we had un-
der consideration an act of the state legislature, entitled
"An Act relating to pleadings in civil actions, and
amending sections 76, 77 and 109 of the Code of Wash-
ington;" and we were unanimously of the opinion that,
under the constitution, the title was sufficiently ex-
pressive of the object of the act. However, in the
course of the opinion it was distinctly stated that the
decision was based upon the constitution of the state,
and not upon the limitations contained in the organic
act of the territory. But, while it appears from the
opinion in that case that this court would hold that a
section of the code might be amended by an act whose
title simply provides for the amendment of such sec-
tion by reference to its number, still it does not follow ·
that we ought, on that account, to hold a territorial

statute valid which was, in effect, declared invalid by
the supreme court, and was so considered at the time
of the adoption of the state constitution.

What we have already said disposes of this case,
but still it may not be improper to observe that, in our
opinion, the learned trial court erred in refusing to
give to the jury the seventh instruction requested by
the defendant, and also in permitting the witness
Edith Halbert to state what was said in a conversation
between herself and her mother, in the absence of de-
fendant, on the morning following the alleged rape,
with reference to what appellant did and said during
the previous night.

The judgment is reversed and the cause remanded
with directions to sustain the demurrer to the infor-
mation.

GORDON, J., concurs.

HOYT, C. J., and DUNBAR, J., dissent.

SCOTT, J. (*concurring*).— In concurring in all that
is said in the foregoing opinion I desire to state more
fully some of the reasons which should prevent a
holding that this and former like amendments are in
force unless the proposition is so plain a one that
there is no escape therefrom.   It will be found upon
inspection that during the territorial days, after the
adoption of the 1881 code, many amendments were
attempted to be made to its various sections by the
legislature in a manner similar to the act in question.
Some of these related to matters of practice and prop-
erty rights, others to the criminal code.   As instances
of the latter, within a page or two of the act in ques-
tion appear acts purporting to amend §§ 825 and 830
of the 1881 code.   Laws, 1885–6, pp. 80, 81.   Section
825 of the 1881 code provided a life imprisonment

for the last offense therein defined and for no other
or different punishment.   As sought to be amended a
penalty of not less than ten nor more than twenty
years was provided.   This section is § 42 of the pres-
ent penal code, and it appears therein as published in
the 1881 code.   Since these cases were decided, con-
victions have been had under § 825 as published in
the 1881 code, and while statistics in relation thereto,
if at hand, would be out of place in a judicial opinion,
it is perhaps admissible to say that a recently pub-
lished statement shows that parties are now confined
in the penitentiary thereunder, and, considering the
time that has elapsed, such is certainly probable.   If
sentenced to a life imprisonment under a void or re-
pealed statute which gave the court no discretion to
impose a lighter sentence they would be entitled to a
discharge if the statute really in force at the time pro-
vided only for an imprisonment of from ten to twenty
years, and the ends of justice would be defeated
thereby.   The attempted amendment to § 830 also
specified a lesser punishment than was prescribed in
the 1881 code.   This section as originally published
appears as § 48 of the present penal code.   This not
being an uncommon crime, it is fair to assume that
there are parties now under sentence who would be
entitled to their liberty if this section had been
amended by the subsequent law and repealed thereby.
It is likely that there are many convictions depending
on this and the above section and a further investiga-
tion might show other like attempted amendments in
the several sessions of the territorial legislature after
1881.   It was suggested as an argument for sustaining
the act before us that the supreme court of the terri-
tory only decided the questions then before it in the cases
in 3 Wash. T. cited *supra* for the purposes of those cases

only, and that the effect of those decisions should be
limited thereto, or, in any event, that they should not
be held as going beyond the *act* then considered.   But
what the supreme court in fact decided was that such
an entitling of an act was insufficient and the effect
of it was to hold all amendatory acts entitled in that
same way void.   If the effect was to be confined to the
particular act it could as well be limited to the pur-
poses of the particular cases and thereafter each indi-
vidual woman in the territory upon offering to vote
would have a right to have the question passed upon
by the courts if the vote was rejected.   Conceding
this to be true, and that such was the technical ef-
fect only, it would not affect the real force of the de-
cisions.   While the first one was peculiar in being by
but two members of the court—there being four judges
—the last decision was by the full bench, and the
question was certainly no longer an open one.   If it
were an open one the election officers would have been
free to exercise their judgment thereon and to receive
such votes and could not have been prosecuted for re-
ceiving and canvassing illegal votes.   On the contrary
it seems to me that the officers and courts were bound
to obey those decisions and that a wilful violation
thereof by an election officer would subject him to a
criminal prosecution and that it would be no defense
to say that the particular voter had never had the
question adjudicated and that it was an open one as to
the individual voter then offering to vote.   Such is
certainly not the practice in relation to, nor it seems
to me the effect of, judicial determinations.   If it were,
the administration of public business would be in a
chaotic condition indeed.   The effect of the decisions
was to hold all such acts void.   That was the thing to
be observed and respected.   The effect was undoubt-

edly understood to be general and as going to that
extent, for it was followed accordingly in after trials
and elections. Election officers were bound to reject
all such votes thereafter, and the courts were in duty
bound to regard all similarly entitled acts as void, and
be governed by those decisions accordingly in the trials
of future causes. That none of these amendments re-
lating to practice, property or crimes have been re-
garded as in force is amply borne out by the records
of this court. In the hundreds of cases brought here
and decided I recall but one other instance, and believe
there are no more, where any of them have been sus-
tained in any of the superior courts, or relied upon
by either litigant in the supreme court. In that one
instance the act was not passed upon here. It is also
evident from the course of the practice that the decision
in *Marston v. Humes, supra,* was not understood as
reaching back into territorial times and enlivening
the numerous acts that the territorial supreme court
had thus held void, nor did the decision purport to do
so even if we had that authority. Furthermore, the
sustaining of such acts at this time, in addition to its
probable effect upon convicted persons and to the pos-
sible unsettling of many other matters now settled and
disposed of, would greatly impair, if not completely
destroy, the value of the compilation of the laws au-
thorized by the legislature as compiled by Mr. Hill,
and it seems to me would be fraught with most seri-
ous and disastrous consequences.