[No. 4211. Decided April 15, 1902.]

THE STATE OF WASHINGTON *on the Relation of Seattle Electric Company* v. SUPERIOR COURT OF KING COUNTY *et al., Respondents.*

STATUTES — VALIDITY — FAILURE TO EXPRESS SUBJECT IN TITLE.

The legislative act found in Laws 1901, p. 213, entitled "An act to amend section 5645 of Ballinger's Annotated Codes and Statutes of Washington, and declaring an emergency," is void by reason of violating the constitutional requirement (Art. 2, § 19) that the subject of an act shall be expressed in its title.

EMINENT DOMAIN — APPEAL IN CONDEMNATION PROCEEDINGS — VOID SUPERSEDEAS — MANDAMUS.

Laws 1901, p. 213, providing for an appeal in proceedings for the appropriation of private property from an order adjudicating the appropriation to be for a public use being void by reason of the invalidity of the title of such act, mandamus will lie to compel the court, notwithstanding an appeal in such a proceeding, to proceed to cause a jury to be impaneled to determine and assess the amount of damages.

*Original Application for Mandamus.*

*Piles, Donworth & Howe,* for relator.

*William Hickman Moore* and *Kerr & McCord,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This is an original application in this court for a peremptory writ of mandate directed to the superior court of King county and to the Hon. Arthur E. Griffin, judge thereof. The relator is a corporation authorized to construct and operate street and other railways in the state of Washington. By ordinance of the city of Seattle a franchise was granted to said relator to maintain and operate a street railway upon Fourth avenue South and other streets in said city. In December, 1901, the relator filed a petition in the office of the clerk of the superior court of King county for the ascertainment of compensation and appropriation of certain rights in connection with the construction of a trestle, bridge, and roadway in said Fourth avenue South, which structure, or a similar one, was required by the ordinance aforesaid. The ordinance requires that where relator's railway shall cross the tracks of the Columbia & Puget Sound Railroad Company, on Fourth avenue South it shall be elevated a reasonable height above the present grade of said tracks. In said petition Charles B. Smith and Tucker-Hanford Company, a corporation, were and are claimants and respondents. That petition recites, among other things, that the claimants are the owners of certain lots which lie immediately south of the tracks of said Columbia & Puget Sound Railroad Company and on the west side of Fourth avenue South; that in order to comply with said ordinance, and to avoid a dangerous grade crossing of the tracks of said railroad company, which operates a steam railroad, it is necessary for relator to construct a trestle and truss bridge for supporting

its tracks and roadway above the grade of said railroad,
and that such structure must necessarily be elevated above
the natural surface of the ground in front of the claim-
ants' premises.   The character of the proposed structure
is described in the petition, and it is alleged that said
claimants claim that they will be damaged by the con-
struction and operation of the same.   It is alleged that
the use for which such bridge is to be constructed is a
public use; that public necessity requires the prosecution
of said enterprise, and that it is necessary for said pe-
titioner in the operation of its franchises and the exercise
of its public duties.   The petition prays that a jury may
be impaneled to ascertain and determine the compensa-
tion to be paid to the claimants.   Thereafter the petition
came on for hearing, and the court found that the con-
templated use of said structure is a public use and that
public interest requires the construction and maintenance
of said bridge, and entered an order accordingly.   The
court further ordered that upon a given date a jury
should be impaneled to ascertain the amount of damages
which will result to the claimants by reason of the con-
struction and maintenance of said proposed structure.
At the time of entering said decree the claimant Charles
B. Smith, in open court, gave notice of appeal from said
order.   Thereafter the relator filed in the office of the
clerk of the superior court a bond conditioned as re-
quired by § 5646, Bal. Code, which bond was approved
by said clerk; and the claimant Charles B. Smith, on the
same day, filed an appeal bond in the sum of $200.
Afterwards the said claimant moved the court for a stay
of proceedings in said superior court pending the de-
termination by the supreme court of the aforesaid appeal,
the ground of said motion being that by reason of the said

appeal the superior court had no jurisdiction to proceed
with the trial of the question of damages and compensa-
tion while said appeal is pending. The court granted said
motion, and entered an order whereby it was ordered that
by reason of the lack of jurisdiction of said court, on
account of the pendency of said appeal, no jury shall be
impaneled in said cause to determine the question of
compensation, and that said cause shall not be tried
before said court on said question until the determination
of said appeal by the supreme court. At the time of the
making of the last-named order, the relator objected, and
demanded that a jury be impaneled, and that the question
of damages be tried and determined in accordance with
the order theretofore made, which demand was denied
solely for the reason that the court was of the opinion that
it had no power to proceed with said trial while said appeal
is .pending. The relator duly excepted to said order at
the time it was made, and said exception was allowed.
Thereupon application was made to this court for a per-
emptory writ of mandate directed to the superior court,
commanding that said court shall immediately cause a
jury to be impaneled and proceed to try the question of
damages, notwithstanding said appeal.

It is conceded that mandamus is the proper remedy,
if the relator is entitled to relief at all in the premises.
A number of questions are discussed by counsel, but we
think one question must be decisive of this case, and we
will therefore confine ourselves to the discussion of that
alone. By an act of the legislature found in the Session
Laws of 1901, at page 213, it is provided that either party
may appeal from the order of the court adjudicating or
refusing to adjudicate that the contemplated use of prop-
erty sought to be appropriated is really a public use, and

ordering or refusing to order a jury to be summoned
for the assessment of damages. The provision is con-
tained in what purports to be an amendment to § 5645
of Ballinger's Annotated Codes and Statutes of Wash-
ington. The act is entitled as follows: "An act to
amend section 5645 of Ballinger's Annotated Codes and
Statutes of Washington, and declaring an emergency."
Relator's counsel urge that the said act is unconstitutional
and void for the reason that the subject of the act is not
expressed in the title. Article 2, § 19, of the constitution
of Washington, is as follows: "No bill shall embrace
more than one subject and that shall be expressed in the
title." The above constitutional provision is clear, direct,
and mandatory in its nature; and, if the legislative act
in question violates that provision, it must be held void.
Manifestly, under the constitutional requirement the title
of an act must express the subject with which the act
deals. This rule is so universal, and the reason for it
has been so generally discussed, that it seems unneces-
sary to dwell upon it here. The wisdom of the rule sug-
gests itself, in that the reader, whether a member of the
legislature or otherwise, may, by a mere glance at a few
catch words in the title, be apprised of what the act
treats, without further search. Does the title of the act
in question contain such a statement of the subject-matter?
It will be observed that it merely refers to a certain
section of Ballinger's Code, which it purports to amend,
and no intimation is given as to the subject-matter of the
section which it is sought to amend. It is clear that the
reader cannot determine from the title what subject is
treated by the section in Ballinger's Code or by the
amending act itself. This, we think, is in violation of the
constitutional requirement. No elaborate statement of the

21—28 WASH.

subject of an act is necessary to meet the spirit of the constitution. A few well-chosen words, suggestive of the general subject treated, is all that is required. But we think the absence of any such suggestive words is fatal, and that to hold otherwise would be to utterly ignore the constitutional provision. In *Marston v. Humes,* 3 Wash. 267 (28 Pac. 520), the constitutionality of an act was assailed because of an alleged defective title. The title was as follows: "An act relating to pleadings in civil actions and amending §§ 76, 77 and 109 of the Code of Washington of 1881." The act was held to be valid for the reason that the title did state a subject, to-wit, "An act relating to pleadings in civil actions." It is true, the learned writer of the opinion went further, and stated that as the Code of 1881 is a valid and binding body of laws, arranged and consecutively sectionized under authority of the legislature, a section of such Code may be amended by an act under a title which simply provides for the amendment of such section by its number, without any designation of the subject-matter of the section to be amended. But such statement was not necessary for the decision of that case, inasmuch as it was determined that the title then under consideration did contain a clearly defined subject. It is suggested that the argument there used, as applying to acts amending a section of the Code of 1881, does not apply with equal force here. That Code, as stated above, was adopted as an authoritative body of laws. Its consecutive sections were arranged by authority of the legislature and afterwards re-enacted by that body, thereby making not only its contents, but the numbers and arrangement of the sections, the act of the legislature. It is very properly suggested by counsel that Judge Ballinger has prepared a Code which is of great convenience to the bench and bar of the state, but that Code cannot be

said to be clothed with authority equal to that of the Code of 1881. The latter is a purely legislative product, while the former is a private compilation, which has simply received the approval of the legislature as an official compilation of existing statutes, but of no greater authority than all other existing official compilations of session laws of the state. See Session Laws 1899, p. 109, § 1. Ballinger's Code was not 'enacted by the legislature, as was the Code of 1881, but was only approved as a compilation of laws for the purposes of reference, as provided in § 2 of the act of 1899, above cited. But whether the argument in *Marston v. Humes, supra,* applies with equal force here or not, the fact remains that the only question really decided in that case was that, aside from the reference to the section, the title contained sufficient words to indicate the subject, and that the act was therefore constitutional. In this connection, we desire to be distinctly understood as holding that by authority of the act of 1899, *supra,* it is entirely proper for the legislature to refer to sections of Ballinger's Code in the title of an act; but such mere reference to the sections of a private compilation of laws, although ably and carefully prepared, and even recognized by the legislature as an official compilation, cannot take the place of the constitutional requirement that the title of an act shall contain some statement indicating the actual thing of which the law treats.

In *State v. Halbert,* 14 Wash. 306 (44 Pac. 538), it was held that an act of 1885-86, attempting to amend a section of the Code of 1881 by mere reference to its number in the title of the amending act, was void. The amending act was passed by the territorial legislature, and it was held that under the authority of *Harland v. Territory,* 3 Wash. T. 131 (13 Pac. 453), and *Rumsey v. Territory,* 3 Wash. T. 332a (21 Pac. 152), the act was void.

It was urged in the case that *Marston v. Humes* had adopted a rule contrary to that announced by the supreme court of the territory, but the court based its decision upon the ground that the effect of the territorial decisions was to render the act void. The constitution provided that all the laws then in force in the territory which were not repugnant to the constitution should remain in force until they should expire by their own limitation, or be repealed by the legislature; and it was therefore held that the law was of no force at the time of the adoption of the constitution, because it had theretofore become void by virtue of the territorial decisions. In the course of the opinion the court merely referred to what was said in *Marston v. Humes,* without expressing either approval or disapproval thereof, and, having based its decision upon the ground above stated, did not pass upon the precise question presented here. The same question which was involved in *State v. Halbert, supra,* was also presented, and the same rule adopted, in the following cases: *State v. Dillon,* 14 Wash. 703 (46 Pac. 1119); *Poncin v. Furth,* 15 Wash. 201 (46 Pac. 241); *State v. Smith,* 15 Wash. 698 (46 Pac. 1119); *In re Nolan,* 21 Wash. 395 (58 Pac. 222).

In *Parker v. Superior Court of Snohomish County,* 25 Wash. 544 (66 Pac. 154), an application was made to this court for a writ commanding the court below to refrain from further proceedings in a condemnation case; it being claimed that an order adjudicating the question of public use had been made, from which order the appeal had been taken under the authority of the act of 1901 now under consideration. The court declined to order the writ issued, and based its decision upon the ground that the order from which the appeal was attempted was not an order adjudicating the question of public use, but

was only an order overruling a demurrer to a complaint, and was therefore not a final order which was appealable. The constitutionality of the act of 1901 was not raised or considered in that case.

As far as we are advised, the above is a review of all the decisions of this court which may be said to bear upon the subject. It will thus be seen that the precise question involved here has not before been squarely presented to this court for decision. The argument in *Marston v. Humes*, heretofore mentioned, is a criticism of the opinion written by Mr. Justice TURNER in *Harland v. Territory, supra;* but, as already stated, the criticism was not necessary to support the real ground of the court's decision. Yet whatever may be said of the argument, it has a distinguishing feature from the case at bar. The argument had the support of the fact that the amending act then under consideration referred to a section that had been adopted as such by a previous legislature, and in making reference to it that body was referring to something that had been theretofore created by it, and which existed by reason of its own authoritative act. In this case, however, the reference is to a section of a private compilation, the arrangement of which was not created by the legislature. But under any view of the former case the mandate of the constitution seems to us so plain that we conceive it to be our duty to hold squarely that a mere reference to a section in the title of an act does not state a subject. What is the significance of the word "subject," in this connection? Webster defines it as "that of which anything is affirmed or predicated; the theme of a proposition or discourse; that which is spoken of." To say that mere reference to a numbered section embodies the idea of a theme, proposition, or discourse, it seems to us, is not sustained by the ordinary understanding of those terms.

The theme of a legislative act is that of which it treats, and an amending act treats of the theme covered by the act sought to be amended. We therefore see no escape from the conclusion that the title of an amending act must contain some words which indicate the theme or proposition of which the act sought to be amended treats.

There is some conflict of authority upon this subject, but we believe the rule here announced is the more wholesome and reasonable one; that such was intended by the constitution, and will more effectually prevent hasty and ill-considered legislation. Judge Cooley, in his work on Constitutional Limitations (6th ed.), p. 97, observes that constitutional provisions similar to the one in our constitution are recognized by the highest judicial tribunals in nearly all the states as mandatory and to be enforced by the courts. Further discussing the reasons for these constitutional provisions and the evils sought to be remedied thereby, he observes as follows:

"It may therefore be assumed as settled that the purpose of these provisions was: *first,* to prevent *hodge-podge* or 'log-rolling' legislation; *second,* to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, *third,* to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." Cooley, Constitutional Limitations (6th ed.), pp. 171, 172.

The following cases, in the application of this principle as argued in the opinions, support the rule that the title of an amending act is insufficient when it merely refers to a numbered section or numbered chapter, without fur-

ther indicating its subject: *Webster v. Powell,* 36 Fla. 703 (18 South. 441); *The Borrowdale,* 39 Fed. 376; *People ex rel. McConvill v. Hills,* 35 N. Y. 449; *People ex rel. Rochester v. Briggs,* 50 N. Y. 553; *Tingue v. Village of Port Chester,* 101 N. Y. 294 (4 N. E. 625); *Feibleman v. State,* 98 Ind. 516; *Wall v. Garrison,* 11 Colo. 515 (19 Pac. 469).

In the cases of *Webster v. Powell,* and *The Borrowdale, supra, Harland v. Territory,* above mentioned, is cited with approval. Of that case, Judge DEADY, in the case of *The Borrowdale,* says:

"*Harland v. Washington Territory,* 3 Wash. T. 142 (13 Pac. Rep. 453), is a case directly in point. It was there held that the 'subject' of the act was not expressed in such title, and that the act was, therefore, void. The question is thoroughly considered in the opinion of the court, and the conclusion maintained by argument and authority which are unanswerable."

In *People v. Hills, supra,* the title in question referred only to a certain numbered chapter, which contained many sections. The learned writer of the opinion observed that, "If the framer of the act of March 24, 1865, had entitled it an act to amend section 290 of chapter 389 of the laws of 1851, a reader, by referring to that section, might have obtained from its title some notion of what the subject matter of the act related to;" thus intimating the possibility that if the reference had been made to a distinct section the holding might have been otherwise. But in the later opinion of *People v. Briggs, supra,* the same court said:

"The case of *The People v. Hills* (35 N. Y. 449) is entirely unlike this. There, the title was 'An act to amend chapter 389 of the Laws of 1851.' That act was properly held invalid because no subject was *expressed* in the title. The learned judge, who delivered the opinion in that case,

intimated that if the particular section in the act proposed to be amended had been referred to in the title, it would have been good; but I doubt whether that would have cured the defect. The constitution requires that the subject should be *expressed*. That title expressed no subject, but only contained a reference where the subject might be found. If the title of the act proposed to be amended had been inserted, it would have been free from the constitutional objection."

The above statement that such a title contains no subject, but only a reference to where the subject may be found, is approved and emphasized in *Tingue v. Village of Port Chester, supra.* The last statement in the above quotation, that, if the title of the amending act had contained the title of the act proposed to be amended, it would have been sufficient, was also directly held in *State ex rel. Whitson v. Algood*, 87 Tenn. 163 (10 S. W. 310). In *Feibleman v. State, supra,* the court observed:

"If a section in the revision of 1881 may be amended by simply referring to it by number, so may a law of any session of the legislature be amended in the same way by a title like this: 'An act to amend section 3 on page 46 of the Acts of 1883.' This would lead to looseness and uncertainty in statutory amendments, which it was the main object of the constitutional provision under consideration to prevent."

We are not unmindful that every reasonable presumption not in conflict with constitutional requirement should be indulged in favor of the validity of a legislative act. Courts always hesitate to declare a solemn act of a legislature void. But the judicial department is constituted one of the co-ordinate branches of the government. Its duties are clearly defined, and should be fearlessly discharged. For the foregoing reasons the act must be held unconstitutional and void. There being, therefore, no authority for

an appeal from an order adjudicating an appropriation to be of public use and ordering a jury to be impaneled to ascertain the damages, it follows that there exists here no reason why the superior court shall not forthwith proceed to cause a jury to be impaneled to determine and assess the amount of damages.

Let the writ issue.

Reavis, C. J., and Anders, Mount, Fullerton, Dunbar and White, JJ., concur.