70 P.3d 147 (2003)
Mark BENNETT, Appellant,
v.
STATE of Washington, Respondent.
No. 29173-8-II.
Court of Appeals of Washington, Division 2.
June 3, 2003.
*148 Lianne Schain Malloy, Attorney at Law, Olympia, WA, for respondent.
Mark Bennett, Bonney Lake, WA, for appellant.
SEINFELD, J.
Mark Bennett contends that Engrossed House Bill (EHB) 3901, which implemented 1996 congressional welfare reform provisions, violates the Washington State Constitution's single subject and subject in title requirements. In particular, he challenges the portion of the Bill that authorizes the Department of Licensing to suspend the driver's license of an individual who fails to meet his or her child support obligation. We affirm the trial court's summary judgment dismissing Bennett's cause of action.

FACTS
EHB 3901, enacted in 1997, implemented the federal Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA). 110 Stat. 2105 (1996); Laws of 1997, ch. 58. Congress enacted PRWORA to reduce society's responsibility for the poverty stricken and to increase personal responsibility; it did so by reforming the welfare system. Dixie R. Switzer, Welfare Reform: Oregon's Response to the Personal Responsibility and Work Opportunity Reconciliation *149 Act, 77 Or. L.Rev. 759, 760 (1998). To receive federal monies under PRWORA, states must implement its provisions. Switzer, at 760-61.
EHB 3901 contains a provision that authorizes the Department of Licensing to suspend the driver's license of an individual who fails to pay child support. Laws of 1997, ch. 58, § 806(7); RCW 46.20.291(8). When the Department of Social and Health Services (DSHS) took steps toward suspending Mark Bennett's driver's license for failure to pay child support, Bennett filed this action in Thurston County Superior Court, seeking a declaration that chapter 58 of the Laws of Washington (1997) is unconstitutional under article II, section 19 of the Washington Constitution.
The trial court granted the State's motion for summary judgment. Bennett appeals,[1] arguing that EHB 3901 violates constitutional requirements that a bill contain only one subject and that its title express that subject.

DISCUSSION
Article II, section 19 contains two distinct prohibitions: "(1) no bill shall embrace more than one subject (single subject rule), and (2) that subject shall be expressed in the title of the bill (subject in title rule)." Retired Pub. Employees Council of Washington v. Charles, 148 Wash.2d 602, 628, 62 P.3d 470 (2003). But we presume that a statute is constitutional and liberally construe the prohibitions in article II, section 19 in favor of the challenged legislation. Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 206, 11 P.3d 762 (2000); Belas v. Kiga, 135 Wash.2d 913, 920, 959 P.2d 1037 (1998).
I. The Single Subject Rule
Bennett first argues that EHB 3901 includes multiple subjectsimmigrant protection, Washington WorkFirst, child care, teen parents, illegitimacy prevention and abstinence promotion, accountability of DSHS, child support enforcement, and license suspension[2] and that these subjects do not share a rational unity. The State responds that the provisions in EHB 3901 all relate to the "unifying theme [of] implementing the federal Personal Responsibility and Work Opportunity Reconciliation Act." Br. of Respondent at 28.
In considering whether a bill violates the single subject rule, we first determine whether the bill's title is general or restrictive. City of Burien v. Kiga, 144 Wash.2d 819, 825, 31 P.3d 659 (2001). A general title is broad, comprehensive, and generic; a restrictive title is specific and narrow. Kiga, 144 Wash.2d at 825, 31 P.3d 659; Amalgamated, 142 Wash.2d at 207-08, 210, 11 P.3d 762. To be general, a title need not contain a general statement of the subject or subjects of the bill; rather, "[a] few well-chosen words, suggestive of the general topic stated, are all that is necessary." Kiga, 144 Wash.2d at 825, 31 P.3d 659.
If the title indicates a general subject or single purpose, the bill may constitutionally include "all matters which are naturally and reasonably connected with it, and all measures which will, or may, facilitate the accomplishment of the purpose so stated." Amalgamated, 142 Wash.2d at 209, 11 P.3d 762 (quoting Kueckelhan v. Fed. Old Line Ins. Co., 69 Wash.2d 392, 403, 418 P.2d 443 (1966) (quoting Gruen v. State Tax Comm'n, 35 Wash.2d 1, 22, 211 P.2d 651 (1949), overruled on other grounds, State ex rel. Washington State Fin. Committee v. Martin, 62 Wash.2d 645, 384 P.2d 833 (1963))). "The Legislature may, if it chooses, adopt a very broad and comprehensive title in a bill, in which case great liberality will be indulged to hold that any subject reasonably germane to such title may be embraced within the body of the bill." Amalgamated, 142 Wash.2d at 207, 11 P.3d 762 (quoting De Cano v. State, 7 Wash.2d 613, 627, 110 P.2d 627 (1941)).
[A constitutional single-subject prohibition] does not by restricting the contents of an *150 "act" to one subject, contemplate a metaphysical singleness of idea or thing, but rather that there must be some rational unity between the matters embraced in the act, the unity being found in the general purpose of the act and the practical problems of efficient administration. It is hardly necessary to suggest that matters which ordinarily would not be thought to have any common features or characteristics might, for purposes of legislative treatment, be grouped together and treated as one subject. For purposes of legislation, "subjects" are not absolute existences to be discovered by some sort of a priori reasoning, but are the result of classification for convenience of treatment and for greater effectiveness in attaining the general purpose of the particular legislative act....
Amalgamated, 142 Wash.2d at 209-10, 11 P.3d 762 (quoting State ex rel Washington Toll Bridge Auth. v. Yelle, 61 Wash.2d 28, 33, 377 P.2d 466 (1962) (quoting State ex rel. Test v. Steinwedel, 203 Ind. 457, 180 N.E. 865, 868 (1932))) (emphasis added). We determine the existence of rational unity by considering "whether the matters within the body of the [bill] are germane to the general title and whether they are germane to one another." Kiga, 144 Wash.2d at 826, 31 P.3d 659.[3]
The title of EHB 3901 is: "AN ACT Relating to implementing the federal personal responsibility and work opportunity reconciliation act of 1996; amending RCW ..." Laws of 1997, ch. 58. When read in its entirety, EHB 3901's title broadly encompasses the topic of implementing a specific piece of federal legislation that deals with public assistance. Thus, EHB 3901 has a general title. And the provisions of EHB 3901 are germane to its title and to one another in that they all concern implementing PRWORA. See Amalgamated, 142 Wash.2d at 207, 11 P.3d 762 ("There is no violation of article II, section 19 even if a general subject contains several incidental subjects or subdivisions.").
Further, we agree with the State that even if we were to view EHB 3901's title as restrictive, it is enforceable because its provisions are "fairly within" the subject of the title. Amalgamated, 142 Wash.2d at 210, 11 P.3d 762. The title's subject refers to the implementation of a federal act concerning public assistance and each of the bill's provisions operates to accomplish that purpose.
Bennett correctly states that a purpose of the single subject clause is to prevent logrolling, the process of enacting
an unpopular provision pertaining to one subject by attaching it to a more popular provision whose subject is unrelated.... Only where rational unity exists can we be certain voters were not required to vote for an unrelated subject of which the voters disapproved in order to pass a law pertaining to a subject of which the voters were committed.
Kiga, 144 Wash.2d at 825-26, 31 P.3d 659. But we disagree with Bennett's contention that EHB "logrolls" the license suspension provision in with more popular legislation.
The title of EHB 3901 refers to personal responsibility; it does not mention or limit itself to financial aid. Viewed as a general title, it encompasses inducements to the payment of child support enacted to accomplish a legitimate legislative purpose, thereby complying with federal law. See Amalgamated, 142 Wash.2d at 209-10, 11 P.3d 762. Further, even under a restrictive title, license suspension for the nonpayment of child support clearly is aimed at encouraging payor parents to fulfill their financial responsibility to their children, a subject fairly within the subject of personal responsibility. Thus, under a liberal construction of article II, section 19, EHB 3901 does not violate the single subject requirement.
*151 II. The Subject in Title Rule
"The title of an act complies with article II, section 19 if it gives notice which would lead to an inquiry into the body of the act or indicates the scope and purpose of the law to an inquiring mind." Amalgamated, 142 Wash.2d at 217, 11 P.3d 762. "[T]he title need not be an index to the contents, nor must it provide details of the measure." Amalgamated, 142 Wash.2d at 217, 11 P.3d 762.
Bennett contends that EHB 3901's title does not give notice of the bill's contents, in particular that it does not advise a reader that the bill deals with the collection of child support or with driver license revocations. In response, the State argues that the title adequately indicates the bill's subject, which is to implement the federal act to encourage personal responsibility and decrease dependency on public assistance. And as the State points out, enforcing child support obligations "may enable families to reduce dependence on the welfare system." Kansas v. United States, 214 F.3d 1196, 1200 (10th Cir., 2000).
The title of EHB 3901 expressly conveys the fact that the bill implements a federal act. Thus, the title indicates the scope and purpose of the law to an inquiring mind. See Amalgamated, 142 Wash.2d at 217, 11 P.3d 762. Further, the inclusion of the federal act's title, "FEDERAL PERSONAL RESPONSIBILITY AND WORK OPPORTUNITY RECONCILIATION ACT OF 1996," shows that the bill concerns public assistance, giving notice that would lead to an inquiry into the body of the bill. Laws of 1997, ch. 58; see Amalgamated, 142 Wash.2d at 217, 11 P.3d 762.
Bennett cites Fray v. Spokane County, 134 Wash.2d 637, 952 P.2d 601 (1998), for the proposition that merely referencing some other legislation in the title of a bill does not state a subject for constitutional purposes. The title of the bill at issue in Fray was "AN ACT Relating to making technical corrections to chapter 35, Laws of 1991; amending RCW ..." 134 Wash.2d at 652, 952 P.2d 601 (footnote omitted). In holding that the title did not express the subject of the act, Fray cited State ex. rel. Seattle Elec. Co. v. Superior Court, 28 Wash. 317, 325, 68 P. 957 (1902), which determined that "mere reference to a section in the title of an act does not state a subject." Fray, 134 Wash.2d at 654-55, 952 P.2d 601 (quoting Seattle Elec., 28 Wash. at 325, 68 P. 957).
As in Fray, the act challenged in Seattle Electric merely provided a numbered section of the code in its title. The Seattle Electric court found this untenable, stating that "[w]e therefore see no escape from the conclusion that the title of an amending act must contain some words which indicate the theme or proposition of which the act sought to be amended treats." 28 Wash. at 326, 68 P. 957.
Unlike the bills scrutinized in Fray and Seattle Electric, EHB 3901 contains words that indicate the theme or proposition of the act. The title conveys that it is an act to implement the federal personal responsibility and work opportunity act, which plainly demonstrates the theme of the bill. Thus, the bill's title sufficiently states the single subject matter of the bill.
Accordingly, we affirm.
We concur: ARMSTRONG, J., and QUINN-BRINTNALL, A.C.J.
NOTES
[1] The Supreme Court of Washington denied Bennett's petition for direct review and transferred his appeal to this court.
[2] Bennett does not provide citations to the portions of EHB 3901 dealing with these eight subjects; it appears that he merely copied the table of contents.
[3] The Kiga court held that the following title of Initiative 722 was general: "Shall certain 1999 tax and fee increases be nullified, vehicles exempted from property taxes, and property tax increases (except new construction) limited to 2% annually?" 144 Wash.2d at 825, 31 P.3d 659. The court reasoned that "[w]hile there are some parts of the title that may appear restrictive, when read in its entirety the title broadly encompasses the topic of tax relief." Kiga, 144 Wash.2d at 825, 31 P.3d 659.