## STATE ex rel. N. FREDERICK OLSON v. AL. P. ERICKSON.[1]

### March 20, 1914.

### Nos. 18,660—(317).

**Primary election act — title of act.**

1. Chapter 389, Laws 1913, amending certain sections of Revised Laws

[1] Reported in 146 N. W. 364.

Note.—For authorities on the general question of the constitutionality of primary election laws, see notes in 22 L.R.A.(N.S.) 1136 and 41 L.R.A.(N.S.) 132.

1905, as the same were amended by subsequent session laws, and repealing certain session laws, the subject-matter of all such laws being primary elections, which chapter refers in its title to the sections amended by number only, without stating by descriptive words in connection therewith the general subject of the statutes amended, and without reciting in its own title the general subject of the legislation, is not unconstitutional as in violation of article 4, § 27, of the Constitution, requiring the subject of every law to be expressed in its title.

**Same — embraces only one subject.**

2. Nor is it unconstitutional as in violation of article 4, § 27, of the Constitution, providing that no law shall embrace more than one subject.

**Same — subject-matter.**

3. Nor is it unconstitutional because the subject-matter of it is not germane to the statutes amended.

**Same — neither special nor class legislation.**

4. Nor is it unconstitutional as special legislation or as class legislation.

Upon the relation of N. Frederick Olson, the district court for Hennepin county granted its alternative writ of mandamus directed to Al. P. Erickson, as county auditor of Hennepin county, commanding him to receive and file relator's affidavit of candidacy for the nomination of the Democratic party for the office of representative in the Thirty-third legislative district, Class 1, and to place his name upon the preliminary ballot of the Democratic party at the election to be held on September 15, 1914, or show cause why he had not done so. The attorney general appeared specially and moved the court to quash the writ, for the reason that the facts stated in the petition for the writ did not show that the county auditor had failed to perform any duty imposed upon him, but that the facts showed that the auditor acted in all things according to law. The motion was heard and granted by Jelley, J. From the order granting the motion, relator appealed. Affirmed.

*Stanley B. Houck,* for appellant.

*Lyndon A. Smith,* Attorney General, and *James Robertson,* County Attorney, for respondent.

DIBELL, C.

On January 5, 1914, the relator tendered to the respondent, the

county auditor of Hennepin county, his affidavit of candidacy for the office of representative from the Thirty-third legislative district of the state on a party ticket at a primary election to be held September 15, 1914. The auditor refused to receive and file the affidavit. He is the officer with whom filings are made. An alternative writ of mandamus was issued. By Laws 1912, p. 4, c. 2, § 2, amending · R. L. 1905, § 182, candidates for judicial offices, county superintendents of schools and municipal officers in cities of the first class were nominated upon separate ballots designated as nonpartisan ballots. By Laws 1913, p. 542, c. 389, § 2, amending R. L. 1905, § 182, as amended by Laws 1912, p. 4, c. 2, § 2, members of the legislature are also nominated upon separate nonpartisan ballots. By R. L. 1905, § 181, and Laws 1912, p. 4, c. 2, § 1, the general primary election for 1914 would be held on Tuesday, seven weeks preceding the general November election, that is, on September 15, 1914. By Laws 1913, p. 542, c. 389, § 1, amending R. L. 1905, § 181, as amended by Laws 1912, p. 4, c. 2, § 1, the date of the general primary is changed to the third Tuesday in June preceding the general November election. There are other changes made in the primary law some of which will be noted as we proceed. The court quashed the alternative writ and the relator appeals. The question is whether chapter 389, p. 542, Laws 1913, is constitutional. Its constitutionality is attacked on the following grounds:

(1) That the title of the act embraces more than one subject.

(2) That the subject of the act is not expressed in its title.

(3) That the provisions of the act are not germane to the subject-matter of the statutes which it amends.

(4) That the act is special and class legislation.

These objections are not trivial. They were thoroughly well argued. They invite serious consideration; and we have taken such time as was found necessary to reach a mature and satisfactory judgment.

1. The Constitution, article 4, § 27, is as follows:

"No law shall embrace more than one subject, which shall be expressed in its title."

Similar constitutional provisions are found in other states. Some-

times the word *object* instead of *subject* is used. If there is a differ-
ence in the application of them the word *subject* is less restrictive
that the word *object*. Lien v. Board of Co. Commrs. of Norman
County, 80 Minn. 58, 82 N. W. 1094; State v. Cassidy, 22 Minn.
312, 21 Am. Rep. 765. The title of Laws 1913, p. 542, c. 389, is
as follows: "An act to amend sections 181 and 182 of the Revised
Laws 1905, as amended by chapter 2 of the General Laws, Special
Session 1912, Section 184 of the Revised Laws 1905, as amended
by Chapter 226, General Laws 1907, and Chapter 95, General Laws
1909, and Chapter 2, General Laws, Special Session 1912, Section
187, Revised Laws 1905, Section 200, Revised Laws 1905, Section
213, Revised Laws 1905, and Section 217, Revised Laws 1905, all
as amended by Chapter 2, General Laws, Special Session 1912, and
to repeal a part of Section 18 of Chapter 2, Special Session 1912."

The Revised Laws have no title as that term is generally under-
stood. The amendment of 1913 could not have referred to them by
title. It could have added the words, "relating to primary elections,"
or similar words, and had it done so no question would likely be
made as to the sufficiency of the title. The body of law included in
Revised Laws 1905 was the result of a revision by an official com-
mission. The revision was adopted by an act entitled "An act to
revise, consolidate and codify the general laws," approved April 18,
1905. The title was appropriate. State v. Great Northern Ry. Co.
100 Minn. 445, 111 N. W. 289, 10 L.R.A.(N.S.) 250. This act
provided that the revision should be known as *Revised Laws 1905*.
The sections amended by the act of 1913 are a part of chapter 6 of
the revision. The sections referring to primary elections were en-
acted under a general head of *"Nominations by direct vote."* The
section headings, as they now appear in the revision, were in the
revision as enacted by the legislature. By Laws 1905, p. 286, c. 218,
providing for the editing and annotating of the revision, the sections
were required to be numbered consecutively throughout. Before
they were numbered by chapter. As the revision went through the
legislature section 181, under a different number, was a part of chap-
ter 6, and under the general head of "Nominations by direct vote,"
and with the section heading as is now indicated in the revision. The

125 M.—16.

same is true of the other sections.   Chapter 6 referred to elections
and completely covered the subject of general elections and primary
elections.   The revised laws are required to be designated as "Revised
Laws 1905."   R. L. 1905, § 5504.

There are two definite purposes of the constitutional provision
hereinbefore quoted.   One is to prevent fraud upon the public and the
legislature by permitting the passage of acts the nature of which
their titles do not disclose.   Another is to prevent the passage of un-
related measures by a combination of interests each particularly con-
cerned with one or more and careless of the others.   These purposes
were early expressed in State v. Cassidy, 22 Minn. 312, 21 Am. Rep.
765, as follows:

"The well-known object of this section of the Constitution
\* \* \* was to secure to every distinct measure of legislation a sep-
arate consideration and decision, dependent solely upon its individual
merits, by prohibiting the fraudulent insertion therein of matters
wholly foreign, and in no way related to or connected with its sub-
ject, and by preventing the combination of different measures, dis-
similar in character, purposes and objects, but united together with
the sole view, by this means, of compelling the requisite support to
secure their passage."

In People v. Mahancy, 13 Mich. 481, 495, the court, in referring to
a like constitutional provision, said:

"The practice of bringing together into one bill subjects diverse in
their nature, and having no necessary connection, with a view to com-
bine in their favor the advocates of all, and thus secure the passage of
several measures, no one of which could succeed upon its own merits,
was one both corruptive of the legislator and dangerous to the state.
It was scarcely more so, however, than another practice, also intended
to be remedied by this provision, by which, through dexterous man-
agement, clauses were inserted in bills of which the titles gave no
intimation, and their passage secured through legislative bodies
whose members were not generally aware of their intention and
effect."

Illustrations are plentiful in territorial days of legislation induced
by one or both of the motives against which the constitutional pro-

vision is directed.  In State v. Shevlin-Carpenter Co. 99 Minn. 158, 108 N. W. 935, 9 Ann. Cas. 634, the present Chief Justice, in considering the purpose of this provision of the Constitution, and as an illustration of the practices which the Constitution sought to avoid, referred to Laws 1855, p. 73, c. 24, where, under an act entitled "An act to incorporate the Root River Valley and Southern Minnesota Railroad Company," the legislature incorporated the railroad, located the county-seat of Fillmore county, declared Wright county duly organized, and provided for the appointment of certain officers for it.  This illustration may be supplemented by reference to an act a year earlier, Laws 1854, p. 104, c. 42, entitled "An act relative to sheep and swine," which, after regulating the running at large upon the open commons of the animals of the kind mentioned, provided that "no person shall be eligible to hold any office under the laws of this territory who has not been a resident of this territory for six months preceding his election or appointment."  These are exaggerated instances, but they are practical illustrations of the legislation with which the framers of the Constitution were familiar.

With the purpose of the constitutional provision in view we come directly to a consideration of the single question whether the title of an amendatory act referring by number to the sections of the revision, as such revision is amended by specified chapters of subsequent session laws, and repealing certain session laws, without reciting by descriptive words the matter to which the revision or the amendatory act itself relates, or giving the titles of the session laws, is constitutionally sufficient.  In support of the view that such an amendment is constitutional as against the claim that its subject is not expressed in its title we cite as typical a statute of Maryland entitled "An act to amend Article ninety-five of the Code of Public General Laws by adding an additional section thereto," which was upheld in Second German A. B. Assn. v. Newman, 50 Md. 62, 67, where the court said:

"It was not necessary to state in the title that the section to be added to the Code related to the subject of usury; the reference to the particular article in the Code, which relates only to the subject of usury, clearly indicated the subject of the law."

· Another, a statute of Nebraska, entitled "An act to amend section 4 of chapter 55 of the Compiled Statutes of Nebraska," which was upheld in Dogge v. State, 17 Neb. 140, 143, 22 N. W. 348, where the court said:

"All that the law requires is that the amendatory statute shall be definite and certain as to the statute amended. This may be accomplished as well by designating the chapter in the Compiled Statutes as by referring to the act by its title. The legislature alone decides upon the title of an act or amendment thereto, and the act will not be declared unconstitutional unless it is clearly so. The title to the amendatory act in this case is sufficient, and the act is valid."

And another, a statute of North Dakota, entitled "An act to amend Section 10 of Chapter 38, Laws of 1887, being Section 545 of the Compiled Laws," upheld by the circuit court of appeals of this circuit in Steele County v. Erskine, 98 Fed. 215, 221, 39 C. C. A. 173 where Judge Caldwell, delivering the opinion, said:

"The subject of the act was the amendment of that section which was accurately and appropriately designated, and the section as amended was set out in full in the act. The title sufficiently designated the subject of the act. It plainly indicated the object and purpose of the act, which is all the Constitution requires. The subject of a statute is one thing, and its detailed provisions quite another; one is the topic, the other its treatment; one is required to be stated in the title, the other not."

Other cases properly cited in support of the sufficiency of the title are the following: Womack v. Garner, 31 S. W. 358, affirming 10 Tex. Civ. App. 367, 30 S. W. 589; Montgomery v. State, 107 Ala. 372, 18 South. 157; State v. Brown, 41 La. Ann. 771, 6 South. 638; Garrison v. Hill, 81 Md. 551, 32 Atl. 191; Ross v. Aguirre, 191 U. S. 60, 24 Sup. Ct. 22, 48 L. ed. 94; Heath v. Johnson, 36 W. Va. 782, 785, 15 S. E. 980.

The rule stated is supported by the statements of text-writers. 1 Sutherland, St. Const. § 141; 36 Cyc. 1029, 1030; 26 Am. & Eng. Enc. (2d ed.) 592.

Opposed to it are the following cases: State v. Superior Court, 28 Wash. 317, 68 Pac. 957, 92 Am. St. 831; Pennington v. Wool-

folk, 79 Ky. 13; Webster v. Powell, 36 Fla. 703, 18 South. 441; Gunter v. Texas Land & Mortg. Co. 82 Tex. 496, 17 S. W. 840; People v. Briggs, 50 N. Y. 553; Tingue v. Village of Port Chester, 101 N. Y. 294, 4 N. E. 625; Boring v. State, 141 Ind. 640, 41 N. E. 270.

The citation of cases is not exhaustive, though, avoiding a duplication of cases from the same jurisdiction, it is fairly complete, for the cases directly and precisely in point are few. Those cited are of direct value and the weight of authority undoubtedly is that an amendatory act, such as chapter 389, is not unconstitutional because of a failure to state the subject in the title more precisely than by a reference to the statutes and laws amended. We adopt such view.

2. The related question whether the amendatory act contains more than one subject yields readily to a careful analysis.

We have already discussed the purpose of the constitutional provision. It is true that the amending act refers to many different matters or subjects, such as the filing by candidates for nomination, the preparation of ballots, the method of voting, registration, polling places, nomination by voters, and in general all the details from the filing for nomination to the canvass of the votes and the declaration of the result; but all the separate subjects relate naturally and logically and necessarily to the one general subject of primary elections. The following language of Justice Mitchell in Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 28 Am. St. 382, is applicable:

"It is not intended nor should it be so construed as to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, or by multiplying their number, or by preventing the legislature from embracing in one act all matters properly connected with one general subject. The term 'subject,' as used in the constitution, is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that the act should embrace some one general subject; and by this is

meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject."

The general subject of the sections of the Revised Laws 1905 amended by later session laws and by the act of 1913 is the subject of primary elections. This general subject has many included subjects, for the subject of primary elections is one of complicated detail; but they are parts of the general subject to which they relate. "Indeed, it matters not that an act embraces, technically, more than one subject one of which only is expressed in the title, so that they are not foreign and extraneous." State v. Madson, 43 Minn. 438, 45 N. W. 856.

The act of 1913, in the constitutional sense, embraces but one subject.

3. Chapter 389 is amendatory and its provisions must be germane to the statutes amended.

The general subject of the statutes amended is primary elections. It is clear to us that there is such logical and practical connection and relationship between the subject-matter of the statutes amended and the subject-matter of the amending act that the latter is germane. From the standpoint of practical legislation it cannot be otherwise. The changes which particularly affect the relator are the change of the date of the primaries and the change of candidates for the legislature from the partisan to the nonpartisan ballot. There is no substantial question as to the propriety of the change by amendment of the date of the primary. Chapter 2, p. 4, § 2 of the Laws of 1912, amending R. L. 1905, § 182, provides for the nomination of certain officers, not including members of the house of representatives, on a nonpartisan ballot. It was a matter of legislative discretion later to provide for the nomination of members of the house upon a nonpartisan ballot. This was well enough done by amending the act which provided for the nomination of other officers upon a nonpartisan ballot. We think the same is true of other provisions to which our attention was called in argument; and we see no change or ad-

dition made by chapter 389 which might not be made properly by amendment.

The following cases illustrate various applications of the rule requiring the amending statute to be germane: State v. Smith, 35 Minn. 257, 28 N. W. 241; State v. Madson, 43 Minn. 438, 45 N. W. 856; O'Brien v. St. Croix Boom Corp. 75 Minn. 343, 77 N. W. 991; McCollister v. Bishop, 78 Minn. 228, 80 N. W. 1118; Loper v. State, 82 Minn. 71, 84 N. W. 650. Within them the amending act of 1913 is germane to the amended statutes.

4. The relator contends that the amendatory act of 1913 is unconstitutional because it is special legislation and because it is class legislation.

Without stating all the details of the relator's contention, and without always distinguishing between special legislation and class legislation, the broad claim is that there is an unconstitutional classification of the municipalities affected by the act, some being made subject to it and others relieved from it; that there is an improper classification of candidates with respect to the time for filing for nomination, some being required to file within a designated period and others within a different period; that there is an improper classification of candidates as nonpartisan and partisan, without a proper basis of distinction; that it is an improper classification to require partisan candidates to be put in classes upon the primary ballot and to prohibit nonpartisan candidates from being so placed; and that there is an improper classification with regard to the nomination of candidates by petition. These are not all of the relator's specific claims, but they illustrate.

We recognize the rule applicable to special legislation stated in Johnson v. St. Paul & Duluth R. Co. 43 Minn. 222, 45 N. W. 156, 8 L.R.A. 419, that "not only must it (the law) treat alike, under the same conditions, all who are brought 'within its influence,' but in its classification it must bring within its influence all who are under the same conditions." We have considered all of the cases cited by the relator. Space does not permit of their review nor would a detailed discussion of them be with profit. The problem of classification for purposes of legislation is a vexing one, whether the claim

be that the legislation is special or class. To a considerable extent classification must be a matter of legislative determination and discretion. In Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 294, 18 Sup. Ct. 594, 42 L. ed. 1037, the court, in referring to classification by states, for purposes of legislation, said:

"In other words, the state may distinguish, select and classify objects of legislation, and necessarily this power must have a wide range of discretion. It is not without limitation, of course."

In Orient Ins. Co. v. Daggs, 172 U. S. 557, 562, 19 Sup. Ct. 281, 43 L. ed. 552, in discussing an alleged discrimination by classification, the court again said:

"It is not necessary to state the reasoning upon which classification by legislation is based or justified. This court * * * lately reviewed the subject in Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283 [18 Sup. Ct. 594, 42 L. ed. 1037.] We said in that case that 'the state may distinguish, select and classify objects of legislation, and necessarily the power must have a wide range of discretion.' And this because of the function of legislation and the purposes to which it is addressed. Classification for such purposes is not invalid because not depending on scientific or marked differences in things or persons or in their relations. It suffices if it is practical, and is not reviewable unless palpably arbitrary."

It was within the province of the legislature to say when the primary should be held, and what officers should stand for nomination on the partisan and what on the nonpartisan ballot. The same is true of the other grounds of classification claimed to be invalid so far as our seach has led us.

In a general body of statutory law, providing for a state-wide primary with all the machinery necessarily incident to it, it is largely for the legislature to say how officers and municipalities shall be classified, how particular officers shall be nominated, and how expression shall be given to the preferences of the voters. The legislature may make such regulations as are reasonable and impartial and fair. State v. Erickson, 119 Minn. 152, 137 N. W. 385; State v. Moore, 87 Minn. 308, 92 N. W. 4, 59 L.R.A. 447, 94 Am. St. 702.

The attorney general contends that the relator can make no com-

plaint of the changes made by chapter 389, except that relative to the time of holding the general primary and that relative to placing candidates for the legislature upon the nonpartisan ballot; and he cites authorities in support of his contention. We have not examined the authorities and we do not find it necessary to rest our decision upon the contention made. So far as a somewhat thorough investigation has led us we see no provision in the chapter which renders it unconstitutional because not germane, or because special legislation, or because class legislation.

We place our decision upon the broad ground that the act is constitutional as against the objections that the subject thereof is not expressed in its title, that it embraces more than one subject, that its subject-matter is not germane to the statutes amended, and that it is special or class legislation.

Order affirmed.