## SARAH O. SEAMER v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 16, 1919.

No. 21,090.

**Constitution — title of act — Employer's Liability Act of 1915.**

1. Laws 1915, c. 187, is entitled "An Act defining the liability of employers to their employees for personal injury or death." The act provides that "every company, person or corporation owning or operating, as a common carrier or otherwise, a steam railroad or railway in the state of Minnesota, shall be liable in damages to any employee suffering injury * * * resulting in whole or in part from the negligence of any of the officers, agents or employees of such employer," etc. It is *held* that the act is not unconstitutional upon the ground that its subject is not expressed in its title as is required by Const. art. 4, § 27.

**Railway — Act of 1915 includes clerical force of defendant.**

2. The benefits of the act are given "any employee suffering injury while engaged in such employment," or "while * * * engaged in the line of his employment." The defendant is a common carrier steam railroad operating lines within and without the state. It maintains an office building in St. Paul, two or three blocks distant from its railroad lines, which it uses as an administration building. The plaintiff was employed in the transportation office in a clerical capacity. In this office the movement of cars and trains was directed, and records thereof kept, and such work was essential in the operation of the railroad system. The plaintiff, while engaged in the line of her employment, was injured as she was getting into an elevator in the building through the negligence of the elevator boy who was her fellow servant. It is *held* that the statute applies to employees in her situation.

[1] Reported in 172 N. W. 765.

**Constitution — classification — Act of 1915 valid.**

    3. As so construed the statute is not unconstitutional as denying to the defendant the equal protection of the laws within the guaranties and prohibitions of the state Constitution or of the Fourteenth Amendment. The matter of classification of subjects of legislation is primarily for the legislature. Its judgment will not be disturbed if the classification rests on a reasonable basis and is practical and is not arbitrary; nor is a statute invalid merely because some inequalities result.

Action in the district court for Ramsey county to recover $20,000 for injuries received while in defendant's employ. The answer alleged that plaintiff's injuries were due to her own negligence and that of the operator of the passenger elevator mentioned in the opinion. The case came on to be tried before Hanft, J., who granted defendant's motion for judgment on the pleadings. From an order denying her motion for a new trial, plaintiff appealed. Reversed.

*Samuel A. Anderson,* for appellant.

*Watson, Sexton & Mordaunt,* and *P. J. McLaughlin,* for respondent.

DIBELL, J.

This is an action for personal injuries sustained by the plaintiff while in the employ of the defendant. At the trial the defendant moved for judgment on the pleadings. The motion was granted. The plaintiff afterward moved for a new trial and appeals from the order denying it.

There are three questions:

(1) Whether Laws 1915, p. 253, chapter 187, is unconstitutional because its subject is not expressed in its title.

(2) Whether it applies to employees situated as was the plaintiff.

(3) Whether, if it does, it denies to the defendant the equal protection of the laws within the prohibitions of the state Constitution or the Fourteenth Amendment of the Federal Constitution.

1. The title of Laws 1915, p. 253, chapter 187, upon which the plaintiff bases her cause of action, is: "An act defining the liability of employers to their employees for personal injury or death." The defendant claims that the act is unconstitutional because its subject is not expressed in its title.

The act purports to apply "to every company, person or corporation

owning or operating, as a common carrier or otherwise, a steam railroad or railway in the state of Minnesota," etc.

Article 4, § 27, of the Constitution, is as follows:

"No law shall embrace more than one subject, which shall be expressed in its title."

The title must be such as to indicate the general scope of the statute. It must not be a cloak for inappropriate legislation. It must be appropriately indicative of the legislation for which it serves as an introduction. It need not be a complete index. State v. Droppo, 126 Minn. 68, 147 N. W. 829; State v. Erickson, 125 Minn. 238, 146 N. W. 364; State v. Shevlin-Carpenter Co. 99 Minn. 158, 108 N. W. 935, 9 Ann. Cas. 634; State v. Board of Control, 85 Minn. 165, 88 N. W. 533, and cases cited; State v. Madson, 43 Minn. 438, 45 N. W. 856; State v. Cassidy, 22 Minn. 312, 21 Am. Rep. 765. The title is somewhat broader than the legislation enacted under it, as was the title in State v. Droppo, supra. A title broader than the statute, if it is fairly indicative of what is included in it, does not offend the Constitution. State v. Standard Oil Co. 111 Minn. 85, 126 N. W. 527. We hold that the subject of the act is expressed in its title. No claim is made that the statute contains more than one subject.

2. The next question is whether the statute applies to one in the situation of the plaintiff. The plaintiff claims that it does; the defendant that it does not.

The defendant is a railroad corporation organized under the laws of Minnesota with extensive lines of steam railroad within and without the state which it operates as a common carrier. It owns an office building in St. Paul two or three blocks distant from its railroad lines and in a business portion of the city. This building it uses as an administration building. The plaintiff was employed in a clerical capacity in the transportation office. This office has to do with the movement and sending out of trains and cars and the making and keeping of records thereof. Such work is essential to the operation of the railroad system. She was injured while engaged in the line of her employment as she was getting into a passenger elevator, solely through the negligence of the elevator boy, who, it is conceded, was her fellow servant. She does not claim a common-law right of action.

The railway fellow servant act of 1887 (Laws 1887, p. 69, chapter 13), now embodied in G. S. 1913, § 4427, provides that "every company owning or operating, as a common carrier or otherwise, a railroad, shall be liable for all damages sustained within this state by any agent or servant thereof, without contributory negligence on his part, by reason of the negligence of any other servant thereof, and no contract, nor any rule or regulation of such company, shall impair or limit such liability." As originally enacted the statute applied to "every railroad corporation owning or operating a railroad in this state." The change in phraseology was introduced by R. L. 1905, § 2042. This statute has been uniformly construed from Lavallee v. St. Paul, M. & M. Ry. Co. 40 Minn. 249, 41 N. W. 974, down to Nylund v. Duluth & N. E. Ry. Co. 123 Minn. 249, 143 N. W. 739, as applying only to such employees as are subject to the particular hazards arising from the use and operation of railroad. The character of the employment has been made the test of liability; not the character of the employer. It is conceded that the plaintiff was not subject to any so-called "railroad hazard," and has no cause of action under the act of 1887.

The plaintiff rests her right of recovery upon Laws 1915, p. 253, chapter 187. Sections 1 and 2 provide as follows:

Section 1. That every company, person or corporation owning or operating, as a common carrier or otherwise, a steam railroad or railway in the state of Minnesota, shall be liable in damages to any employee suffering injury while engaged in such employment; or, in case of death of such employee, to the surviving widow or husband and children of such employee; and, if none, then to such employee's parents; and, if none, then the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such employer, or by reason of any defect or insufficiency due to the employer's negligence.

The damages recoverable in case of death to be distributed to the parties in interest in the same proportion as personal property of persons dying intestate.

Section 2. That every company, person or corporation owning or operating, as a common carrier or otherwise, a steam railroad or railway in the state of Minnesota, shall be liable in damages to any person suf-

fering injury while he is engaged in the line of his employment, or in case of the death of such employee, to his or her surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such employer, or by reason of any defect or insufficiency in such employer's appliances, machinery or apparatus furnished.

Section 3 adopts the doctrine of comparative negligence and deprives the railroad of the defense of contributory negligence where its violation of a statute enacted for the safety of employees contributes to the injury. Section 4 deprives it of the defense of assumption of risks under like conditions. Section 5 makes a contract exempting the employer from the liability created void. Section 6 defines the word employer. Section 7 provides that the right of action shall survive for the benefit of the widow, etc. Section 8 limits the commencement of an action to two years from the accrual of the cause of action. The statute is largely based on the Federal Employer's Liability Act. U. S. Comp. St. 1916, § 8657; 8 Fed. St. Ann. (2d ed.) p. 1208, et seq.

The reference in the first section to an employer "owning or operating * * * a steam railroad or railway" and to an "employee suffering injury while engaged in such employment," and in the second section a like reference to the employer and to an employee "suffering injury while he is engaged in the line of his employment," furnish the principal basis for the defendant's contention that the act was not intended for those not more directly connected with train or railroad operation than was the plaintiff. The argument is forcefully made that the statute is intended, just as the act of 1887, to reach employees who are subject to the peculiar perils and hazards attached to railroading. It is argued that the statute by its terms applies to those operating private roads like mining, logging and quarry roads and others serving a private industry, none of them common carriers, where the number connected with the operation of the road compared with those in other work in the industry to which the use of the road is incidental is small or practically negligible; that the legislature could not have intended that the statute should apply to all employees of those operating such roads re-

gardless of whether their work brought them in contact with railroad dangers and still it made no distinction; and that a construction making such distinction is unauthorized by the language used. And it is argued that the provisions of the statute adopting the comparative negligence doctrine, abolishing contributory negligence as a defense when the violation by the defendant of a statute intended for the safety of employees contributes to the injury, and in a like situation the defense of assumption of risks, furnish the reasons which induced the enactment of the statute, and indicate that it was not intended to make the scope of the act, so far as concerns the employees embraced within it, broader than that of the act of 1887; and that a purpose thus to extend its application would have been given emphatic expression. These arguments are meritorious and have had careful consideration.

A persuasive and perhaps controlling reason for holding that the act of 1887 was limited in its application to those subject to railroad hazards was the thought that unless so limited it was unconstitutional as class legislation. Such reason, as will be noticed later, is not persuasive now.

As supporting the construction urged by the plaintiff our attention is called to Laws 1915, p. 258, chapter 193, amending the compensation act of 1913, embodied in G. S. 1913, § 8202, which amendment provides that the compensation act shall not apply to "any common carrier by steam railroad." The compensation act of 1913 excluded common carriers and their employees engaged in interstate commerce, but it did not exclude carriers and employees engaged in intrastate commerce. The amendment was enacted on the same day as the statute which we have for construction. The amendment and chapter 187 are in harmony. Railway employees, included within the act of 1915, have now substantially the same relief whether they are engaged in interstate or intrastate commerce. This was likely one purpose of the enactment of the state act. And the suggestion is not without force that the legislature of 1915 did not intend taking from railway employees like the plaintiff the benefit of the compensation act and giving nothing in return, but that it did intend giving them the benefit of chapter 187 in lieu of the compensation act.

We reach the conclusion that the language of sections 1 and 2, con-

strued according to its natural import, and unaffected by a fear that so construed it is unconstitutional, applies to employees of a common carrier steam railroad having to do with the operation of the road not more directly than the plaintiff.

From anything said there is not to be inferred a suggestion that the act of 1915 applies to employees of private railroads such as we have mentioned other than those employees directly connected with their operation; nor is there to be an implication of any holding beyond the point necessary for the present decision. The claims of the private railroads and of their employees will be considered when they are here urging them. We hold that the plaintiff is within the application of the statute.

3. The question remaining is whether the statute, construed as applying to one in the position of the plaintiff, denies to an employer such as the defendant the equal protection of the laws guaranteed by the state Constitution and the Fourteenth Amendment.

The consideration of this question should be approached with the understanding that the propriety of a classification for purposes of legislation is primarily for the legislature. Courts assume that the legislature makes the necessary inquiry and rightly determines the propriety of the classification which it adopts. In Middleton v. Texas Power & Light Co. 249 U. S. 152, 39 Sup. Ct. 227, Justice Pitney, referring among other things to the exclusion of railway employees from the Texas Workmen's Compensation Act, said: "There is a strong presumption that a legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." Courts disturb the legislative determination only when it is clear that its classification is arbitrary and without a reasonable basis.

In Mathison v. Minneapolis Street Ry. Co. 126 Minn. 286, 148 N. W. 71, involving the classification made the basis of our compensation act of 1913, which excluded along with others railway employees engaged in interstate commerce, Judge Taylor, in referring to the essentials of a valid classification, said: "But it is the province of the legislature to determine what differences or peculiarities, of condition or business, furnish a sufficient basis for applying a different rule to those engaged in

such business or those affected by such condition, than is applied to the remainder of the community. It is also the province of the legislature to draw the line, marking the boundary between one class and another and between the several classes and the general public. When such questions have been determined by the legislature, the legislative judgment is binding upon the courts, unless they can point out that the classification adopted is purely fanciful and arbitrary, and that no substantial or logical basis exists therefor." The cases are noted in the opinion and they need not be cited or discussed here.

Legislation is not objectionable because applicable only to a class. Such legislation is usual. Subjects of legislation are commonly and quite necessarily put into classes. To be valid a classification must rest upon a reasonable basis of distinction. All similarly situated must be brought within a class and all within a class must be treated alike. Mathison v. Minneapolis Street Ry. Co. 126 Minn. 286, 148 N. W. 71, L.R.A. 1916D, 412, and cases cited; Dunnell, Minn. Dig. & 1916 Supp, § 1668, et seq. and cases. It is enough if the classification is fair and reasonable and practicable and results in substantial equality. A perfect and technically accurate classification is not essential, nor is it usual, and resultant inequalities are tolerated. Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. ed. 1037; Louisville & N. R. Co. v. Melton, 218 U. S. 36, 30 Sup. Ct. 676, 54 L. ed. 921, 47 L.R.A. (N.S.) 84; Orient Ins. Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. ed. 552; State v. Erickson, 125 Minn. 238, 146 N. W. 364; Majavis v. Great Northern Ry. Co. 121 Minn. 431, 141 N. W. 806.

In Dominion Hotel v. State, 249 U. S. 265, 39 Sup. Ct. 273, 39 L. ed. —, which involved the validity of a statute of Arizona fixing the hours of labor and discriminating in the case of certain railway employees, Justice Holmes said: "The Fourteenth Amendment is not a pedagogical requirement of the impracticable. * * * The only question is whether we can say on our judicial knowledge that the legislature of Arizona could not have had any reasonable ground for believing that there were such public considerations for the distinction made by the present law. The deference due to the judgment of the legislature on the matter has been emphasized again and again."

Common carrier railroads have rights and obligations not shared by

individuals or by the ordinary corporation. They are public service corporations. They exercise the right of eminent domain. They are accorded rights over public streets and roads. They are dependent upon the public and the public upon them. They are affected with a public interest. For many purposes they are put in a class for legislation without a thought of impropriety. They are subject to legislative control in rates and in the conduct of their business as it affects the general public and local communities. The public has some interest in their relations with their employees. They are subject to the exercise of the police power resident in the state. The act which we are considering rests on the police power.

The railway fellow-servant acts of the different states have much in common. The construction put upon them differs somewhat among the different states. See 47 L.R.A.(N.S.) 84; Bradford Const. Co. v. Hein, 88 Miss. 314, 42 South. 174, 12 L.R.A.(N.S.) 1040, 8 Ann. Cas. 1070; note, 19 Ann. Cas. 192, 196; 8 Labatt, M. & S. § 2844, et seq. The Supreme Court of the United States does not concern itself with the correctness of the construction put by state courts upon their statutes. They mean to the Federal Supreme Court what the state courts say they mean. Taking such meaning the Supreme Court determines whether they offend the Federal Constitution. No case comes to mind where a state railway fellow-servant statute has been held by the Federal Supreme Court offensive to the Fourteenth Amendment. It may be noted, however, that usually the employee injured is subject to a railroad hazard or is engaged at the time in some branch of railway service intimately connected with the physical operation of the road.

The plaintiff puts reliance upon Louisville & N. R. Co. v. Melton, 218 U. S. 36, 30 Sup. Ct. 676, 54 L. ed. 921, 47 L.R.A.(N.S.) 84, and Mobile, etc., R. Co. v. Turnipseed, 219 U. S. 35, 31 Sup. Ct. 136, 55 L. ed. 78, 32 L.R.A.(N.S.) 226, Ann. Cas. 1912A, 463. These cases, which are reviewed in Majavis v. Great Northern Ry. Co. 121 Minn. 431, 141 N. W. 806, contain expressions indicating that a common carrier may be made liable by statute to all of its employees for the negligence of a fellow employee, and that the putting of railroads into a class for fellow-servant legislation is not objectionable. The Melton case involved a statute of Indiana. Melton was engaged in building a foundation for

a coal tipple. He was injured by the negligence of a fellow servant. His injury had no connection with the movement or operation of trains. The hazard from which his injury came was not greater than that to which another building a like foundation in the nearby town was subjected, nor was it different in character. The case was tried in a Federal court in Kentucky and a recovery had. It was held that the statute did not offend the Fourteenth Amendment though applied to employees not subject to railroad hazards. The Indiana statute had been upheld before in Tullis v. Lake Erie & W. R. Co. 175 U. S. 348, 20 Sup. Ct. 136, 44 L. ed. 192. The precise character of the employment did not appear. It was sustained after the Melton case in Chicago I. & L. Ry. Co. v. Hackett, 228 U. S. 559, 33 Sup. Ct. 581, 57 L. ed. 966, involving a death occurring in Indiana from a railroad hazard, and the court, referring to the Tullis and Melton cases, and to the holding of the supreme court of Indiana that its statute was based on hazard, said: "That the act, as thus construed and upheld by the highest court of Indiana, does not contravene the equal protection clause of the Fourteenth Amendment is settled by the two decisions of this court cited above. But we do not intimate that the act, if construed as applicable to all employees of a railroad company, would be in contravention of that clause." We find no later expression, and the case before us is not, we take it, definitely determined by the Supreme Court of the United States.

Wisconsin from the beginning has held that a classification including all employees of a common carrier railroad does not offend the Constitution. Its statute, which contains exceptions not material here, was lately applied to a case where the injured workman was engaged in the construction of a wire fence along the right of way and was injured by the negligence of a fellow servant. Kiley v. Chicago, M. & St. P. Ry. Co. 138 Wis. 215, 119 N. W. 309, 120 N. W. 756; Id. 142 Wis. 154, 125 N. W. 464. Train operation had nothing to do with the injury though the employee was engaged in a service essential to the conduct of the railway business. His risk was not different from what it would have been had he been constructing a fence in the same way on an adjoining farm. In the second Kiley case the court, by Chief Justice Winslow, said: "Railway carriers from their very nature must, in large measure, be governed by laws peculiar to themselves, and such has been the char-

acter of railway legislation since the business began.    *    *    *    Without
attempting again to review the authorities which were reviewed upon the
former appeal, we are content to rest this branch of the case upon the
principle before stated, namely, that railway carriers, on account of the
public character of their business, may properly be classified so far as
their relations with their employees are concerned, whether such em-
ployees are moving trains or not, and may be made subject to liabilities
and obligations greater than those imposed upon other employers of
labor."

It is not to be supposed that the court at the time it upheld the 1887
fellow-servant act in Lavallee v. St. Paul, M. & M. Ry. Co. 40 Minn. 249,
41 N. W. 974, Johnson v. St. Paul & Duluth R. Co. 43 Minn. 222, 45
N. W. 156, 8 L.R.A. 419, and other like cases, by limiting its applica-
tion to railroad hazards, largely for the reason that it would be uncon-
stitutional as class legislation unless so limited, would have held the pres-
ent act valid if construed as applying to one in the situation of the plain-
tiff.    The act of 1887 and the act of 1915 are not so dissimilar that the
one would be held unconstitutional and the other constitutional, at the
same time, when applied to a nonrailroad hazard.    We are not following
the Lavallee and other cases on the constitutional question.    The consti-
tutional prohibitions of class legislation are the same now as then.    A
marked change, however, has come in the view taken by the courts of the
different states, and by the Supreme Court of the United States, and by
our own, upon the question of what is a proper classification for legis-
lative purposes.    More and more the question is felt to be a legislative
one which it is presumed the legislature has rightly determined.    The
cases which we have cited, both in the general principles which they an-
nounce and in their concrete facts, sufficiently evidence the changed view.
In reaching and adopting this different and broader view the courts have
accepted the result of changed industrial and other conditions and the
increased complexity of social organization to which legislation relates.
We think we are in harmony with the state courts generally, and with the
Supreme Court of the United States in its consideration of state legisla-
tion claimed to be in violation of the Fourteenth Amendment, when we
hold as we do that the act of 1915, when applied to one employed by a
common carrier steam railroad and working as was the plaintiff does not

offend the state or Federal Constitution. This is the only constitutional question before us.

In our consideration of the applicability and constitutionality of the statute we have had, in addition to the arguments in the briefs filed, helpful aid from the supplemental briefs of counsel in Larson v. Duluth M. & N. Ry. Co. supra, page 366, 172 N. W. 762.

Order reversed.