# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MANFRED UWE BARTZ and KAREN RAE UHLRICH BARTZ, as personal representatives of the estate of Kristiane N. Bartz; and MANFRED UWE BARTZ and KAREN RAE ULRICH BARTZ, husband and wife, and the marital community composed thereof, | No. 78456-1-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |
| Appellants, | |
| v. | |
| BURLINGTON NORTHERN SANTA FE, LLC, d/b/a BNSF Railway and/or BNSF Railway Company and/or Burlington Northern Santa Fe Railway, a Delaware corporation doing business in the state of Washington; JAMES F. EOFF and JANE DOE EOFF, and the marital community composed thereof; JONATHAN D. TISDALE and JANE DOE TISDALE, and the marital community composed thereof; TROY D. SHTOGREN and JANE DOE SHTOGREN, and the marital community composed thereof; and JOHN DOES and JANE DOES # 1 through #20, | |
| | FILED: July 29, 2019 |
| Respondents. | |

APPELWICK, C.J. — In a tragic accident, Kristiane was struck and killed by a Burlington Northern Santa Fe LLC (BNSF) train as it was passing over a trestle. Her parents sued BNSF and its employees. The trial court granted BNSF and the employees' motion to dismiss. The Bartzes argue that BNSF is not immune from

liability under RCW 81.44.020. They assert that the immunity statute violates the state constitution. And, they contend that the trial court failed to consider that the BNSF employees may have consented to Kristiane's presence on the trestle. We affirm.

## FACTS

On May 9, 2015, 17 year old Kristiane Bartz was on a railroad trestle that runs over the Stillaguamish River, south of the city of Silvana. The spot was a popular swimming location, where people commonly jumped from the trestle into the river below. On that day, a northbound BNSF train entered onto the trestle. Kristiane,[1] still on the trestle at the time, was tragically struck and killed.

Kristiane's parents, Manfred and Karen Bartz, sued BNSF and the employees involved in the accident. BNSF and the defendant employees filed a CR 12(b)(6) motion to dismiss based on RCW 81.44.020, which provides in relevant part,

> A railroad company and its employees are not liable for injury to or death of any person occurring on or about any railway bridge or trestle if the person was not a railway employee but was a trespasser or was otherwise not authorized to be in the location where the injury or death occurred.

Finding that the statute precluded the Bartzes' claims, the trial court granted BNSF's motion to dismiss. The Bartzes appeal.

## DISCUSSION

The Bartzes make three arguments. First, they argue that the clause granting the railroad immunity must be narrowly construed and that the trial court

---

[1] We use her first name for clarity and intend no disrespect.

erred by determining that BNSF was immune from all liability. Second, they argue that the trial court erred by failing to find RCW 81.44.020 unconstitutional under the state constitution. Third, they argue that the trial court erred by not considering the possibility that BNSF may have consented to Kristiane and others being on the railroad tracks at the time, and dismissing the suit before discovery.

I. RCW 81.44.020

The Bartzes argue first that the trial court erred in failing to narrowly construe RCW 81.44.020. They assert that the court erred in dismissing this case "where the facts alleged involve no connection between the death of [Kristiane] and the presence of walkways or handrails near the railroad bridge where she was killed." And, citing RCW 81.44.020, they contend that the immunity granted by RCW 81.44.020 is for situations where there is a "potential for increased danger to the public resulting from adding walkways or handrails to railway bridges."

A. Legislative History

In 1911, the Washington Legislature adopted the first version of RCW 81.44.020 (LAWS OF 1911, ch. 117, § 65). The statute provided,

> If upon investigation the commission shall find that the equipment or appliances in connection therewith, or the apparatus, tracks, bridges or other structures of any common carrier are defective, and that the operation thereof is dangerous to the employees of such common carrier or to the public, it shall immediately give notice to the superintendent or other officer of such common carrier of the repairs or reconstruction necessary to place the same in a safe condition, and may also prescribe the rate of speed for trains or cars passing over such dangerous or defective track, bridge or other structure until the repairs or reconstruction required are made, and may also prescribe the time within which the same shall be made. Or if, in its opinion, it is needful or proper, it may forbid the running of trains or cars over any defective track,

bridge or structure until the same be repaired and placed in a safe condition.

There shall be no appeal from or action to review any order of the commission made under the provisions of this section.

LAWS OF 1911, ch. 117, § 65.

In 1977, the legislature amended the statute, adding to the first paragraph,

Failure of a railroad bridge or trestle to be equipped with walkways and handrails may be identified as an unsafe or defective condition under this section after hearing had by the commission upon complaint or on its own motion. The commission in making such determination shall balance considerations of employee and public safety with the potential for increased danger to the public resulting from adding such walkways or handrails to railway bridges: PROVIDED, That a railroad company shall not be liable for injury to or death of any person occurring on or about any railway bridge or trestle if such person was not a railway employee but was a trespasser or was otherwise not authorized to be in the location where such injury or death occurred.

LAWS OF 1977, 1st Ex. Sess., ch. 46, § 1.

And, the legislature amended the second paragraph to read, "There shall be no appeal from or action to review any order of the commission made under the provisions of this section if the commission finds that immediate compliance is necessary for the protection of employees or the public." LAWS OF 1977, 1st Ex. Sess., ch. 46, § 1.

In 1982, the legislature again amended RCW 81.44.020, this time adding immunity for railroad employees from suits by trespassers and others. LAWS OF 1982, ch. 141, § 1. In 2007, the legislature removed the "Provided that" language from the grant of immunity, and made various non-substantive language changes. LAWS OF 2007, ch. 234, § 39.

4

B. Statutory Construction

The Bartzes contend that, "Because this statute includes a grant of immunity for railroads, because the grant of immunity is in derogation of the common law, and because it impacts a plaintiff's fundamental right under the Washington Constitution, this [c]ourt must narrowly construe it." They argue that the statute grants immunity only in "situations where there is a 'potential for increased danger to the public resulting from adding walkways or handrails to railway bridges.'" The Bartzes assert further that the statute "makes no reference to willful conduct and certainly evidences no legislative intent to immunize railroads or their employees from willful conduct resulting in injury or death."

If the language of a statute is not ambiguous, this court gives effect to its plain meaning. Cerrillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). If a statute is ambiguous, we employ tools of statutory construction to ascertain its meaning. Id. This court does not subject an unambiguous statute to statutory construction and has declined to add language to an unambiguous statute even if it believes the legislature intended something else but did not adequately express it. Id.

The original 1911 legislation addressed railroad employee and public safety by regulating railway facilities in general, including bridges. LAWS OF 1911, ch. 117, § 65. In 1977, when the legislature added the immunity provision for railroad companies, it did so for situations in which a trespasser or unauthorized person is injured or dies "on or about any railroad bridge or trestle." LAWS OF 1977, 1st Ex.

5

Sess., ch. 46, § 1 (emphasis added). It did not limit the immunity for injuries or deaths occurring on bridges or trestles that have walkways or handrails.

The statute currently states,

> A railroad company and its employees are not liable for injury to or death of any person occurring on or about any railway bridge or trestle if the person was not a railway employee but was a trespasser or was otherwise not authorized to be in the location where the injury or death occurred.

RCW 81.44.020.

When the words in a statute are clear and unequivocal, this court is required to assume the legislature meant exactly what it said and apply the statute as written. Duke v. Boyd, 133 Wn.2d 80, 87, 942 P.2d 351 (1997). Although the court should not construe statutory language so as to result in absurd or strained consequences, neither should the court question the wisdom of a statute even though its results seem unduly harsh. Id.

Here, the language of the statute is plain and unambiguous—railroad companies and their employees are not liable for a person's injury or death on any railway bridge or trestle if the person is not authorized to be there. It is not limited to bridges or trestles with walkways or handrails. There is not a limitation for willful or wanton conduct. The legislature could have included that language if it intended to narrow the scope of the immunity. See State v. Larson, 184 Wn.2d 843, 853, 365 P.3d 740 (2015) ("These statutes demonstrate that the legislature knows how to craft a broad statute when it wants to do so."); see also RCW 18.71.210(5) (immunity of emergency medical technicians and others "shall not apply to any act or omission which constitutes either gross negligence or willful or wanton

misconduct"). The unambiguous language of RCW 81.44.020 makes plain that the legislature's grant of immunity did not exclude willful and wanton misconduct. The Bartzes ask this court not only to add an exception for when there is willful conduct, but also to apply the grant of immunity only to bridges or trestles with walkways or handrails. But, it is not the province of this court to go beyond the plain language of the statute.[2]

The trial court did not err in granting BNSF's motion to dismiss based on RCW 81.44.020.

II.    Constitutionality

The Bartzes argue second that RCW 81.44.020 is unconstitutional under the Washington State Constitution article II, section 19 single-subject and subject-in-title rules.

A statute is presumed to be constitutional and the burden is on the party challenging the statute to prove its unconstitutionality beyond a reasonable doubt. Island County v. State, 135 Wn.2d 141, 146, 955 P.2d 377 (1998).

Article II, section 19 provides, "No bill shall embrace more than one subject, and that shall be expressed in the title." This provision is to be liberally construed in favor of the legislation. Wash. Ass'n for Substance Abuse & Violence Prevention

---

[2] Even if we were to accept the Bartzes' interpretation, photographs in the record show that the trestle in this case had a walkway and handrail. The walkway and handrail ended where the portion of the trestle crossed over the river. For the Bartzes to prevail, this court would have to not only find that the statute grants immunity on only bridges and trestles with handrails and walkways, but also that immunity applies if the incident causing injury or death occurs only on the part of the bridge or trestle that has a walkway or handrail. That result would go well beyond the plain language of the statute.

7

v. State, 174 Wn.2d 642, 654, 278 P.3d 632 (2012). There are two distinct prohibitions in article II, section 19: (1) the single-subject rule and (2) the subject-in-title rule. Id.

A. Single-Subject Rule

The single-subject rule aims to prevent the grouping of incompatible measures and to prevent "logrolling," which occurs when a measure is drafted such that a legislator may be required to vote for something of which he or she disapproves in order to secure approval of an unrelated law. Id. at 655. In determining whether legislation contains multiple subjects, we begin with the title of the measure. Id. A title may be general or restrictive, in other words, broad or narrow, since the legislature in each case has the right to determine for itself how comprehensive shall be the object of the statute. Id. In assessing whether a title is general, it is not necessary that the title contain a general statement of the subject of an act; a few well-chosen words, suggestive of the general subject stated, is all that is necessary. Id.

Where a title is general, all that the constitution requires is some rational unity between the general subject and the incidental subdivisions. Id. at 656. There is no violation of article II, section 19 even if a general subject contains several incidental subjects or subdivisions. Id. Moreover, for purposes of legislation, "subjects" are not absolute existences to be discovered by some sort of a priori reasoning, but are the result of classification for convenience of treatment and for greater effectiveness in attaining the general purpose of the particular legislative act. Id.

In contrast, a title is considered restrictive where a particular part or branch of a subject is carved out and selected as the subject of the legislation. Filo Foods, LLC v. City of SeaTac, 183 Wn.2d 770, 783, 357 P.3d 1040 (2015). Restrictive titles are not given the same liberal construction as general titles; laws with restrictive titles fail if their substantive provisions do not fall fairly within the restrictive language. Id.

Declaring the title of RCW 81.44.020 to be "Correction of unsafe or defective conditions--Walkways and handrails as unsafe or defective condition, when," the Bartzes assert that it has a restrictive title. The Bartzes mistakenly point to the label devised by the Washington Code Reviser, and not the title or section heading that was part of the legislative enactment itself. See State v. T.A.W., 144 Wn. App. 22, 26, 186 P.3d 1076 (2008) ("[T]his label is devised by the Washington code reviser after the passage of the legislative enactment and is therefore of little use in determining legislative intent.").

The Washington code reviser is employed and empowered to "compile the statutory law of the state of Washington as enacted by the legislature into a code or compilation of laws by title, chapter and section." RCW 1.08.013. One of the code reviser's duties is to "[c]hange the wording of section captions . . . and provide captions to new chapters and sections." RCW 1.08.015(2)(l). Furthermore, RCW 1.08.017(3) provides,

> Section captions, part headings, subheadings, tables of contents, and indexes appearing in legislative bills shall not be considered any part of the law, and the reviser may omit such provisions from the Revised Code of Washington and annotations unless, in a particular

instance, it may be necessary to retain such to preserve the full intent of the law.

While the code reviser's labels are meant to be helpful, they cannot change the meaning of the statute in question. T.A.W., 144 Wn. App. at 26. Only a title or section heading that is part of the legislative enactment itself, as opposed to a caption or label added later by the code reviser, may have any legal import in determining the legislative intent. Id. Because captions may be provided or modified by the code reviser, they should not be afforded the same consideration as the title of a bill in an article II, section 19 analysis. State v. Roby, 67 Wn. App. 741, 745, 840 P.2d 218 (1992).

As mentioned above, the legislature passed its first version of the statute at issue in 1911. LAWS OF 1911, ch. 117, § 65. The legislative title of the bill was "AN ACT relating to public service properties and utilities, providing for the regulation of the same, fixing penalties for the violation thereof, making an appropriation and repealing certain acts." LAWS OF 1911, ch. 117, at 538. In 1977 when the legislature amended the statute and added the immunity provision at issue here, the legislative title was "AN ACT Relating to railway bridges; and amending section 81.44.020, chapter 14, Laws of 1961 and RCW 81.44.020." LAWS OF 1977, 1st Ex. Sess., ch. 46, at 260. The 1982 amendment was titled, "AN ACT Relating to railroads and amending section 81.44.020, chapter 14, Laws of 1961 as amended by section 1, chapter 46, Laws of 1977 ex. sess. and RCW 81.44.020." LAWS OF 1982, ch. 141, at 586. The 2007 amendment title was "AN ACT Relating to the

regulation of transportation providers; amending RCW 81.01.040. . . ."[3] LAWS OF 2007, ch. 234, at 966.

The 1977 amendment, which added the immunity provision for railroad companies, has the most specific title of the different versions of the statute. But, that title, "AN ACT Relating to railway bridges," is general. LAWS OF 1977, 1st Ex. Sess., ch. 46, at 260. Where a title is general, all that the single-subject rule requires is some rational unity between the general subject and the incidental subdivisions. Wash. Ass'n, 174 Wn.2d at 656. We determine the existence of rational unity by considering whether the matters within the body of the bill are germane to the general title and whether they are germane to one another. Bennett v. State, 117 Wn. App. 483, 488, 70 P.3d 147 (2003).

Here, the subject of the title is railway bridges. The first sentence of the statute empowers the commission to notify companies of defective equipment, tracks, and bridges causing dangerous conditions to employees or the public. RCW 81.44.020. The statute also provides, "Railroad bridges or trestles without walkways and handrails may be identified as an unsafe or defective condition." Id. Then, in the portion of the statute at issue here, it grants railroad companies immunity from liability when a person is injured or dies on a railway bridge if that person is not a railway employee. Id. The body of the statute is germane to the title, and the provision granting immunity to railroad companies for incidents that occur on railway bridges is germane to the remainder of the statute.

The statute does not violate the single-subject rule.

---

[3] A long list of previous versions of the statute has been omitted for brevity.

B. Subject in Title Rule

Under the second clause of article II, section 19, the subject of a bill must be expressed in its title. Wash. State Grange v. Locke, 153 Wn.2d 475, 497, 105 P.3d 9 (2005). The subject in title requirement is to be liberally construed in favor of the constitutionality of the legislation. Id. "Any 'objections to the title must be grave and the conflict between it and the constitution palpable before we will hold an act unconstitutional.'" Id. (quoting Wash. Ass'n of Neighborhood Stores v. State, 149 Wn2d 359, 372, 70 P.3d 920 (2003)). The title satisfies the subject in title requirement if it gives notice that would lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law. Id. The purpose is to inform voters and members of the legislature on the subject matter of the measure they are voting on. Id.

Again, for this analysis we examine the legislature's title, and not the label devised by the code reviser, as the Bartzes assert. The title "AN ACT Relating to railway bridges" leads a reader into the body of the act. LAWS OF 1977, 1st Ex. Sess., ch. 46, at 260. A legislator reading the title of the act for the first time, without any knowledge of the contents of the act, would be reasonably informed as to the subject matter of the act.

The statute does not violate the subject-in-title rule.

III.    CR 12(b)(6) Ruling

The Bartzes argue that the trial court erred in not considering that the BNSF employees "may have consented" to people using the railroad bridge on May 9, 2015, and therefore dismissal under CR 12(b)(6) was error.

12

This court reviews CR 12(b)(6) dismissals de novo. FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014). Dismissal is warranted only if the court concludes, beyond a reasonable doubt, the plaintiff cannot prove any set of facts which would justify recovery. Id. The court must assume the truth of facts alleged in the complaint, as well as hypothetical facts, viewing both in the light most favorable to the nonmoving party. Didlake v. State, 186 Wn. App. 417, 422, 345 P.3d 43 (2015). If a plaintiff's claim remains legally insufficient even under his or her proffered hypothetical facts, dismissal pursuant to CR 12(b)(6) is appropriate. FutureSelect, 180 Wn.2d at 963.

Again, the statute provides,

> A railroad company and its employees are not liable for injury to or death of any person occurring on or about any railway bridge or trestle if the person was not a railway employee but was a trespasser or was otherwise not authorized to be in the location where the injury or death occurred.

RCW 81.44.020. To avoid the immunity language, the Bartzes must show their daughter was a railway employee, was not a trespasser, or was authorized to be on the bridge.

The complaint alleges,

> 4.11 On May 9, 2015, at some time between 2:30[ ]pm and the time of the train-pedestrian collision that resulted in Kristiane N. Bartz'[s] death, defendant James F. Eoff drove a BNSF truck northbound on the tracks and across the Silvana trestle and observed several people on the tracks and trestle.
>
> 4.12 Despite defendant James F. Eoff's observation, he did not advise oncoming BNSF trains or his dispatcher that people were on or near the trestle. In addition, defendant Eoff failed to slow his vehicle sufficiently to communicate with anyone on the trestle and

13

failed to communicate with anyone on the trestle to warn them of an approaching BNSF train.

The Bartzes contend that "[a] reasonable interpretation of the facts" is that, on the day of the accident, BNSF track inspector James Eoff observed people on the tracks and bridge ahead of the coming train, and that he did "little or nothing to remove" or warn them. And, they argue that "should a fact finder conclude BNSF or its employees consented to the situation that day, [BNSF] can hardly now claim the immunity [it] rel[ies] on under RCW 81.44.020."

Taking the facts alleged in the complaint as true, Eoff did not communicate with anyone on the trestle. The plain meaning of "authorize" is "to endorse, empower, justify, or permit by or as if by some recognized or proper authority." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 146 (2002). Since the Bartzes allege that Eoff did not communicate with anyone on the bridge, it follows that he did not authorize anyone to be there.

The complaint did not allege that Kristiane was a railroad employee. It attested that, for local citizens, the trestle was a popular spot from which to jump into the river, and that Kristiane was one of these individuals. The complaint conceded that there were signs "in the area of the Silvana trestle." But, it alleged that the signs were "inadequate to provide an effective or meaningful warning of the dangerous conditions." It did not argue that Kristiane was not trespassing. The complaint relies on Kristiane having consent to be on the bridge, implied from the conduct of the railroad employee driving by and not warning her. Viewing the facts in the light most favorable to the Bartzes, the trial court correctly concluded beyond

14

a reasonable doubt that the Bartzes have not set forth any facts which would justify recovery.

The trial court did not err in granting the CR 12(b)(6) motion to dismiss. We affirm.

Appelwick, C.J.

WE CONCUR:

Leach, J.

Schindler, J.